IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 12, 2011

## DANIELLE HARRIS v. TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-002917-09/CT-002918-09      Karen R. Williams, Judge**

**No. W2011-00037-COA-R3-JV - Filed September 6, 2011**

This appeal results from the trial court's order, finding six of Appellant's children dependent and neglected. Because there is clear and convincing evidence in the record to support the trial court's findings of dependency and neglect and severe child abuse, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Andrew L. Wener, Memphis, Tennessee, for the appellant, Danielle Harris.

Robert E. Cooper, Jr., Attorney General and Reporter; and Joshua Davis Baker, Assistant Attorney General, for appellee, State of Tennessee, Department of Children's Services.

**MEMORANDUM OPINION[1]**

---

[1]  Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

This is an appeal from the trial court's determination that the six children at issue are dependent and neglected. Appellant Mother, Danielle M.H., was previously before us as the result of an appeal from the trial court's termination of her parental rights to the same six children at issue here. *In the Matter of: Shyronne D.H., et. al.*, No. W2011-00328-COA-R3-PT, 2011 WL 2651097 (Tenn. Ct. App. July 7, 2011). In the termination case, we vacated the trial court's order terminating Mother's parental rights and remanded. *Id*. at *10.

We will not protract the length of this opinion to restate all of the facts that were set out in *In the Matter of: Shyronne D.H., et. al.*, 2011 WL 2651097. Rather, we will briefly discuss the facts and procedure that are relevant to the question of whether the trial court erred in its determination that these children were dependent and neglected.

This appeal involves six of Appellant's children, : Shyronne D.H. (d.o.b. 12/13/1998), Corey H. (d.o.b. 9/5/2000), Eriq T.H. (d.o.b. 12/8/2001), Amani M.H. (d.o.b. 3/14/2003), Dwayne M.H. (d.o.b. 9/6/2005), and Derrix D. C., Jr.(d.o.b. 3/28/2007).[2] As a result of a July 23, 2008 incident between Mother and her son Derrix, *see infra*, the children were placed in the custody of their maternal grandmother on August 1, 2008. On October 14, 2008, Mother was indicted in the Criminal Court of Shelby County on one count of aggravated child neglect and endangerment, and one count of aggravated child abuse of a child under eight years of age.[3] Thereafter, in November 2008, the children were placed in

---

[2] Mother gave birth to two more children, Deandre H. (d.o.b.11/20/2008) and De'Juan H., after the six children at issue were taken out of her custody. Neither Deandre, nor De'Juan are the subject of the instant appeal.

[3] Specifically, Mother was indicted for alleged violation of Tennessee Code Annotated Section 39-15-402, which is also known as Haley's Law. Haley's Law provides, in relevant part, as follows:

> (a) A person commits the offense of aggravated child abuse, aggravated child neglect or aggravated child endangerment, who commits child abuse, as defined in § 39-15-401(a); child neglect, as defined in § 39-15-401(b); or child endangerment, as defined in § 39-15-401(c) and:
> (1) The act of abuse, neglect or endangerment results in serious bodily injury to the child;
>
> * * *
>
> (3) The act of abuse, neglect or endangerment was especially heinous, atrocious or cruel, or involved the infliction of torture to the victim.
>
> (b) A violation of this section is a Class B felony; provided, however, that,

(continued...)

the temporary custody of the State of Tennessee, Department of Children's Services ("DCS," or "Appellee"); they have remained in foster homes since that time. On August 16, 2010, Mother pleaded guilty to felony aggravated assault of a child and was sentenced to six years in prison.[4] She is currently incarcerated.

DCS subsequently petitioned the juvenile court to adjudicate the children dependent and neglected. On July 7, 2009, the juvenile court sustained DCS's petition, finding the children to be dependent and neglected pursuant to Tennessee Code Annotated Section 37-1-102(b)(12)(F) and (G). The juvenile court also found the children to be victims of severe child abuse under Tennessee Code Annotated Section 37-1-102(b)(23)(A) due to the severe physical abuse suffered by Derrix. Based upon these findings, the juvenile court ordered the children to remain in DCS's custody and ordered Mother to have no contact with them. Mother appealed this order to the Shelby County Circuit Court pursuant to Tennessee Code Annotated Section 27-1-159.

On November 9, 2010, the circuit court conducted a *de novo* review of the juvenile court's dependency and neglect adjudication. By order of November 10, 2010, the circuit court found that:

---

[3](...continued)

> if the abused, neglected or endangered child is eight (8) years of age or less, or is vulnerable because the victim is mentally defective, mentally incapacitated or suffers from a physical disability, the penalty is a Class A felony.

> \* \* \*

> (d) "Serious bodily injury to the child" includes, but is not limited to, second- or third-degree burns, a fracture of any bone, a concussion, subdural or subarachnoid bleeding, retinal hemorrhage, cerebral edema, brain contusion, injuries to the skin that involve severe bruising or the likelihood of permanent or protracted disfigurement, including those sustained by whipping children with objects.

[4] At the hearing on dependency and neglect, Mother's attorney stated that her plea to the criminal charges was an Alford plea. An Alford, plea, also know as the best interest plea, allows a criminal defendant to plead guilty while asserting his or her innocence. *See North Carolina v. Alford*, 400 U.S. 25, 37–38 (1970). The question of whether an Alford plea may be considered in a dependency and neglect hearing is not before this Court. However, as discussed *infra*, the trial court primarily relied upon the testimony of Dr. Lakin and, at any rate, did not base its decision on dependency and neglect solely upon Mother's plea in the criminal proceedings.

5. The Petition to Adjudicate Dependency and Neglect on Derrix...Dewayne...Amani...Eriq...Corry...and Shyronne...shall be sustained on the basis of the severe injuries Derrix suffered in the custody of his mother.

6. [The children] are dependent and neglected pursuant to Tenn. Code Ann. §37-1-102(b)(1), which defines abuse as occurring "when a person under the age of eighteen (18) is suffering from, has sustained, or may be in immediate danger of suffering from our sustaining a wound, injury, disability, or physical or mental condition caused by brutality, neglect, or other actions or inactions of a parent, relative, guardian or caretaker." Derrix suffered a myriad of serious injuries including a cerebral hypoxic brain injury, subarachnoid hemorrhage in the brain, and extensive bilateral retinal hemorrhages in his eyes, and he now lives with several irreversible medical conditions, including blindness, an inability to speak, an inability to walk, cerebral palsy, and a seizure disorder. His five siblings...were in the mother's home when Derrix was injured.

7. [The children] are also dependent and neglected pursuant to Tenn. Code Ann. §37-1-102(b)(12)(F), which defines a dependent and neglected child as a child that "is in such condition of want or suffering or is under such improper guardianship or control as to injure or endanger the morals or health of such child or others." All six children were in the mother's care when Derrix suffered the abovementioned injuries and resulting medical conditions.

8. Finally, [the children] are the victims of severe child abuse as defined in Tenn. Code Ann. §37-1-102(b)(23)(A) as "the knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause great bodily harm or death."

Mother appeals, raising two issues for review:

1. Whether there is clear and convincing evidence of dependency and neglect?

2. Whether there is clear and convincing evidence of severe child abuse.

In order to address these issues, we must review the statutory scheme governing proceedings on dependency and neglect as well as the role of the juvenile court and the circuit court in such proceedings. The Legislature has described what constitutes dependency and neglect, the procedures and steps to be taken in making this determination, and the jurisdiction of the juvenile courts, as follows:

As is relevant to the instant appeal, a "dependent and neglected child" is a child:

> (F) Who is in such condition of want or suffering or is under such improper guardianship or control as to injure or endanger the morals or health of such child or others;
> (G) Who is suffering from abuse or neglect;

Tenn. Code Ann. § 37–1–102(b)(12).

The General Assembly has vested juvenile courts with "exclusive original jurisdiction" to hear allegations that a child is dependent and neglected as defined above. Tenn. Code Ann. § 37–1–103(a)(1). The statutes governing dependent and neglect proceedings require, in effect, a two step analysis. First, under Tennessee Code Annotated Section 37–1–129, the court is to hold a hearing and to make findings as to whether a child is dependent and neglected. If the juvenile court finds the child to be dependent and neglected, by clear and convincing evidence, then the juvenile court is to proceed immediately, or at a postponed hearing, to make "a proper disposition in the case." Tenn. Code Ann. § 37–1–129(c). Making a "proper disposition" requires the court to make a custody decision "best suited to the protection and physical, mental and moral welfare of the child." Tenn. Code Ann. § 37–1–130(a).

The fact that a child is dependent and neglected and the fact that a parent has engaged in severe child abuse must be established by clear and convincing evidence. Tenn. Code Ann. § 37–1–129(c); ***Tenn. Dep't of Children's Servs. v. M.S.***, No. M2003–01670–COA–R3–CV, 2005 WL 549141, at *10 (Tenn. Ct. App. Mar.8, 2005), *perm. app. denied* (Tenn. Aug. 29, 2005) (holding that, despite the lack of a statutory requirement that severe child abuse be shown by clear and convincing evidence, due to the consequences of such a finding the clear and convincing standard must be applied). For the evidence to be clear and convincing, it must eliminate any serious or substantial doubt about the correctness of the conclusions to be drawn from the evidence. ***In re Valentine***, 79 S.W.3d 539, 546 (Tenn. 2002) (citing ***Hodges v. S.C. Toof & Co.***, 833 S.W.2d 896, 901 n. 3 (Tenn.1992)). The evidence should produce a firm belief or conviction as to the truth of the allegations sought to be established. ***In re M.L.P.***, 228 S.W.3d 139, 143 (Tenn. Ct. App.2007). In contrast to the preponderance of the evidence standard, clear and convincing evidence should demonstrate that the truth of

the facts asserted is "highly probable" as opposed to merely "more probable" than not. *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App.2005) (quoting *In re C.W.W.*, 37 S.W.3d 467, 474 (Tenn. Ct. App. 2000)).

In dependency and neglect cases, the General Assembly has directed that any appeal from the juvenile court is to be heard by the circuit court.[5] The appeal from juvenile court to circuit court in a dependency and neglect case is not the same as this Court's review of trial court decisions as set out in the Tennessee Rules of Appellate Procedure. That is because, by statute, the circuit court is to "hear the testimony of witnesses and try the case *de novo*." Tenn. Code Ann. § 37–1–159(a). A *de novo* trial is "[a] new trial on the entire case-that is, on both questions of fact and issues of law-conducted as if there had been no trial in the first instance." *Kissick v. Kallaher*, No. W2004–02983–COA–R3–CV, 2006 WL 1350999, at *3 (Tenn. Ct. App. May 18, 2006) (no Tenn. R. App. P. 11 application filed). Consequently, the circuit court is not "reviewing" the juvenile court's decision; instead, it is conducting a new proceeding as though the petition was originally filed in circuit court.

This Court reviews the trial court's findings of fact *de novo* on the record accompanied by a presumption of correctness, "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d); *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004). If some of the trial court's factual findings are based on its determinations of the credibility of the witnesses, then this Court will afford great weight to those credibility determinations, and will not reverse such determinations absent clear evidence to the contrary. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995).

Whether the ultimate issues of dependency and neglect or severe child abuse have been established by clear and convincing evidence are questions of law, which we review *de novo* with no presumption of correctness. *See In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007) (holding, in a termination of parental rights case, that "[a]s a question of law, the trial court's ruling that the facts of this case sufficiently support the termination ground of willful abandonment are reviewed *de novo* with no presumption of correctness."); *see also In re Valentine*, 79 S.W.3d 539, 548 (Tenn. 2002) (holding that the question of substantial noncompliance with the requirements of a permanency plan was a question of law reviewed *de novo* with no presumption of correctness). To the extent the trial court made findings of fact in support of the ultimate issues, we review the factual findings pursuant to Tennessee Rule of Appellate Procedure 13(d), i.e., *de novo* with a presumption of correctness unless the evidence preponderates otherwise. *In re A.T.P.*, No. M2006–02697–COA–R3–JV,

---

[5] "The juvenile court shall be a court of record; ... and any appeal from any final order or judgment in ... [a] dependent and neglect proceeding, filed under this chapter, may be made to the circuit court that shall hear the testimony of witnesses and try the case *de novo*." Tenn. Code Ann. § 37–1–159(a).

2008 WL 115538, at * 4 (Tenn. Ct. App. Jan.10, 2008) (holding that findings of fact in a dependency and neglect action for severe child abuse are "presumed to be correct unless the evidence preponderates against them"); *see also **In re Adoption of A.M.H.**,* 215 S.W.3d at 808–09. However, the trial court's conclusions of law concerning the ultimate issues are reviewed *de novo* without a presumption of correctness. ***S. Constructors, Inc. v. Loudon County Bd. of Educ*.,** 58 S.W.3d 706, 710 (Tenn. 2001). Therefore, this Court will review the trial court's specific findings of fact in support of its ultimate conclusions *de novo*, pursuant to Tennessee Rule of Appellate Procedure 13(d), with a presumption of correctness; however, we will review those conclusions of law, i.e., that the parents engaged in severe child abuse and that the children are dependent and neglected, *de novo* with no presumption of correctness.

In this case, the trial court found that Mother had severely abused these children. The Legislature has defined severe child abuse, in relevant part, as follows:

> "Severe child abuse" means:
>
> (A)(i) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause great bodily harm or death and the knowing use of force on a child that is likely to cause great bodily harm or death;
> (ii) "Serious bodily injury" shall have the same meaning given in § 39-15-402(d).[6]
> (B) Specific brutality, abuse or neglect towards a child that in the opinion of qualified experts has caused or will reasonably be expected to produce severe psychosis, severe neurotic disorder, severe depression, severe developmental delay or retardation, or severe impairment of the child's ability to function adequately in the child's environment, and the knowing failure to protect a child from such conduct;

---

[6] Tennessee Code Annotated Section 39-15-402(d) states:

> "Serious bodily injury to the child" includes, but is not limited to, second- or third-degree burns, a fracture of any bone, a concussion, subdural or subarachnoid bleeding, retinal hemorrhage, cerebral edema, brain contusion, injuries to the skin that involve severe bruising or the likelihood of permanent or protracted disfigurement, including those sustained by whipping children with objects.

Tenn. Code Ann. § 37–1–102(b)(21).

Turning to the record, Mother testified that, on July 23, 2008, while she was getting the other children dressed, Derrix, who was fifteen months old at the time, fell from her bed, striking his head on the bedside table, and on the floor. Mother stated that Derrix cried out once, then was silent. Mother further testified that Derrix then went into a seizure and stopped breathing. She called 911 and, with the dispatcher's assistance, began CPR on Derrix until the ambulance arrived.

Dr. Karen Lakin, the Medical Director for LeBonheur's Child Assessment Program, testified by deposition (admitted as Trial Exhibit 1) that she was consulted on Derrix's case. Dr. Lakin testified that, when Derrix arrived at the hospital, he was in critical condition. Upon examination, doctors found that Derrix had suffered a cerebral hypoxic brain injury, a subarachnoid hemorrhage, and extensive bilateral retinal hemorrhages.

When asked how Derrix sustained these life-threatening injuries, Mother took the position, which she maintained throughout the hearing, that any injuries extraneous to his fall from the bed were the result of her attempts to perform CPR and were not the product of violent shaking or other abusive behavior on her part. Dr. Lakin's testimony contradicts Mother's testimony. When asked whether Derrix's injuries were consistent with a fall from a bed, Dr. Lakin stated:

> These injuries are very severe, and the amount of injury is not consistent with a simple fall from a bed. . . . You don't get. . . extensive bilateral retinal hemorrhages as a result of falling off a bed. You don't get cerebral hypoxic injury.

Moreover, Dr. Lakin opined that, even if it is true that Mother administered CPR incorrectly to Derrix, this fact, alone, would not have caused his particular injuries. Rather, Dr. Lakin testified that Derrix injuries would have required physical abuse such as violent shaking.

Although Derrix was born prematurely, and had some medical difficulties at the outset, the record indicates that, just prior to his injuries, Derrix was developmentally normal for a child his age–he was walking and had started to say words. Following the events of July 23, 2008, Derrix is blind, has a gastric feeding tube, cannot walk and is confined to a wheelchair. He cannot talk, has cerebral palsy, a seizure disorder, and a tracheostomy tube to aid his breathing. Because of his injuries, Derrix will need care for the rest of his life.

Based upon the foregoing testimony, the trial court specifically found, *inter alia*, that:

> Derrix did fall, and when he was having difficulty breathing after the fact, the mother shook him way too hard in an attempt to revive him. As a result, the mother caused life-threatening injuries to Derrix forever altering the quality of his life.

From our review of the entire record, we conclude that there is clear and convincing evidence to support the trial court's finding. Based upon Mother's actions, and the nature of Derrix's injuries, we conclude that the trial court correctly found that Derrix was the victim of severe child abuse as defined at Tennessee Code Annotated Sections 37–1–102(b)(21)(A), (B), or (C). Furthermore, the fact that Derrix's five siblings were witness to the abuse that occurred on July 23, 2008 , and the fact that Mother was capable of inflicting such abuse, supports the trial court's finding that these children were also the victims of severe child abuse under Tennessee Code Annotated Section 37-1-102(b)(21)(A). Moreover, there is sufficient evidence in the record to support the trial court's finding that these children were dependent and neglected under Tennessee Code Annotated Sections 37-1-102(b)(12)(F).

For the foregoing reasons, we affirm the order of the trial court, finding these children to be dependent and neglected. Costs of this appeal are assessed against the Appellant, Danielle M. H.. Because Appellant is proceeding under a pauper's oath, execution may issue for costs of the appeal if necessary.

_____
J. STEVEN STAFFORD, JUDGE