IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Submitted on Briefs December 6, 2006

IN RE M.L.P.

Appeal from the Juvenile Court for Knox County
Nos. 17545, 31294    Tim Irwin, Judge

No. E2006-01492-COA-R3-PT - FILED JANUARY 30, 2007

B.R.P. ("Father") was sentenced to serve eighteen years in prison when his daughter was six years old. The trial court terminated his parental rights based on Tenn. Code Ann. § 36-1-116(g)(6), which provides for the termination of parental rights of a person who is incarcerated under a sentence of ten years or more if that person's child is under the age of eight at the time of sentencing. In this appeal, Father argues that Tenn. Code Ann. § 36-1-116(g)(6) is inapplicable because Father might not have to serve his entire sentence if he obtains postconviction relief. He also maintains that termination of his parental rights is not in the best interest of his daughter. After careful review of the evidence and applicable authorities, we hold that the possibility of postconviction relief is irrelevant to a trial court's determination of whether the requirements of Tenn. Code Ann. § 36-1-116(g)(6) have been met. We further hold that the evidence does not preponderate against the trial court's finding by clear and convincing evidence that termination of Father's parental rights was in the best interest of his daughter. Therefore, we affirm.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed;
Case Remanded

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL PICKENS FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Brandy Slaybaugh, Knoxville, Tennessee, for the Appellant, B.R.P.

Robert E. Cooper, Jr., Attorney General and Reporter, and Amy T. McConnell, Assistant Attorney General, Nashville, Tennessee, for the Appellee, State of Tennessee, Department of Children's Services.

**OPINION**

*I. Background*

This case involves the termination of the parental rights of Father to his daughter, M.L.P., born January 29, 1996.[1]  M.L.P. was removed from the home of her Mother, K.G.W., by a consent decree entered on October 7, 2003.[2]  In the October 7, 2003, order, the juvenile court found M.L.P. to be dependent and neglected and placed her in the temporary custody of her cousin, A.J.

At the time of M.L.P's removal from her mother's residence, Father was serving a six-year sentence for voluntary manslaughter as punishment for a crime he committed when M.L.P. was less than one year old.[3]  Father was released from prison before serving his complete sentence; however, he was arrested while on probation.  On August 21, 2002, a jury found Father guilty of violation of the Habitual Motor Vehicle Offender Act, evading arrest, and two counts of reckless endangerment with a deadly weapon.[4]  M.L.P. was six years old at the time of her father's conviction on these charges.  Father received an effective sentence of eighteen years at his sentencing hearing on November 7, 2002.[5]  He was transferred to Brushy Mountain Correctional Complex to serve his sentence, and Father was residing at that facility at the time of his parental termination hearing.

Following a hearing on November 6, 2003, the juvenile court found M.L.P., once again, to be dependent and neglected, based on the presence of an indicated sexual perpetrator in A.J.'s home.  The court placed M.L.P. in the custody of the Department of Children's Services ("DCS"), which placed the child in foster care.  On November 16, 2004, DCS filed a petition to terminate Father's parental rights.  A bench trial was conducted, after which the juvenile court entered a Termination of Parental Rights and Final Decree of Complete Guardianship on June 13, 2006.  The juvenile court found, by clear and convincing evidence, that DCS had proven the existence of grounds for Father's termination pursuant to Tenn. Code Ann. § 36-1-113(g)(6) based on Father's incarceration for a sentence of ten years or more before M.L.P. was eight years old.  Furthermore, the court found by

---

[1]When this termination proceeding commenced, the Department of Children's Services was also seeking termination of Father's parental rights to a second child, T.K.P., born April 14, 1997.  Paternity of both M.L.P. and T.K.P. was established by a Parentage Order entered on July 11, 2000, *nunc pro tunc* to June 20, 2000.  However, during the trial of the case at bar, the juvenile court entered an order rescinding Father's voluntary acknowledgment of paternity to T.K.P. after Father testified that he only acknowledged paternity of T.K.P. because the mother of the children lied to him and said he was the father.

[2]Mother has since surrendered her parental rights to M.L.P.

[3]On December 9, 1997, a Blount County jury found Father guilty of voluntary manslaughter for shooting a man on August 20, 1996.

[4]The trial judge merged the two counts of reckless endangerment into one count following the jury's verdict.

[5]Father appealed his conviction and sentence on numerous grounds.  The Court of Criminal Appeals affirmed in part and reversed in part, finding that Father's convictions for evading arrest and reckless endangerment should have been merged.  However, the merger resulted in no change to Father's effective sentence of 18 years.

clear and convincing evidence that it was in the best interests of M.L.P. that Father's parental rights be terminated.  Father appeals.

## *II.  Issues*

The issues raised by Father on appeal are restated as follows:

1. Whether the trial court's ruling that Father's parental rights should be terminated pursuant to Tenn. Code Ann. § 36-1-116(g)(6) was supported by clear and convincing evidence.

2.  Whether the trial court was correct in finding, by clear and convincing evidence, that termination of Father's parental rights was in the best interest of M.L.P.

## *III.  Standard of Review*

A biological parent's right to the care and custody of his or her child is among the oldest of the judicially recognized liberty interests protected by the due process clauses of the federal and state constitutions.  *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Hawk v. Hawk*, 855 S.W.2d 573, 578-79 (Tenn. 1993); *Ray v. Ray*, 83 S.W.3d 726, 731 (Tenn. Ct. App. 2001).  Although this right is fundamental and superior to claims of other persons and the government, it is not absolute.  *State v. C.H.K.*, 154 S.W.3d 586, 589 (Tenn. Ct. App. 2004).  This right continues without interruption only as long as a parent has not relinquished it, abandoned it, or engaged in conduct requiring its limitation or termination. *Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002).  Although "parents have a fundamental right to the care, custody, and control of their children," this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute.  *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Stanley v. Illinois*, 405 U.S. 645 (1972)).

Termination proceedings are governed by statute in Tennessee.  Parties who have standing to seek the termination of a biological parent's parental rights must first prove at least one of the statutory grounds for termination.  Tenn. Code Ann. § 36-1-113(c)(1).  Secondly, they must prove that termination of the parent's rights is in the child's best interest.  Tenn. Code Ann. § 36-1-113(c)(2). Because the decision to terminate parental rights has profound consequences, courts must apply a higher standard of proof in deciding termination cases. Therefore, to justify termination of parental rights, the party seeking termination must prove by clear and convincing evidence the ground (or grounds) for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W. 3d 539, 546 (Tenn. 2002).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions.  *In re C.W.W.*, 37 S.W.3d 467, 474 (Tenn. Ct. App. 2000); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).  Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable, *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. M.S., filed Aug. 13, 2003),

*no appl. perm. filed*, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002); *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In a non-jury case such as this one, we review the record *de novo* with a presumption of correctness as to the trial court's determination of facts, and we must honor those findings unless the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings. *Seals v. England/Corsair Upholstery Mfg. Co., Inc.,* 984 S.W.2d 912, 915 (Tenn. 1999). Further, "[o]n an issue which hinges on the credibility of witnesses, the trial court will not be reversed unless there is found in the record clear, concrete, and convincing evidence other than the oral testimony of witnesses which contradict the trial court's findings." *Galbreath v. Harris*, 811 S.W.2d 88, 91 (Tenn. Ct. App. 1990) (citing *Tennessee Valley Kaolin Corp. v. Perry*, 526 S.W.2d 488, 490 (Tenn. Ct. App. 1974)). The trial court's specific findings of fact are first reviewed and are presumed to be correct unless the evidence preponderates against them. We then determine whether the facts, either as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the grounds for terminating the biological parent's parental rights. *In re S.M.*, 149 S.W.3d 632, 640 (Tenn. Ct. App. 2004). The trial court's conclusions of law are reviewed *de novo* and are accorded no presumption of correctness. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

### IV. Analysis

#### A. Ground for Termination

We first address whether the trial court erred in finding that there was a statutory ground for terminating Father's parental rights. As long as one statutory ground for termination is established by the facts in this case and termination is in the best interests of the children, the trial court's decision will be sufficiently supported. *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003). In this case, DCS alleged, and the trial court found, one ground for termination of Father's parental rights, based on Tenn. Code Ann. § 36-1-113(g)(6). That statute provides the following as a ground for termination of parental rights:

> The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court.

Tenn. Code Ann. § 36-1-113(g)(6) (2006). Father testified that he is currently serving an eighteen-year prison sentence and that he received the sentence when M.L.P. was six years old. Father concedes that those circumstances meet the requirements of Tenn. Code Ann. § 36-1-116(g)(6). However, he asserts that the juvenile court should also consider his support and visitation with M.L.P. before he was incarcerated, and that the court should not terminate his parental rights until he has exhausted his criminal appeals and postconviction relief efforts.[6] We will examine each of these arguments in turn.

In his brief, Father contends that the trial court erred by not considering his record of support and visitation for the most recent four months before his incarceration. Father relies on *In Re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005), to support his proposition. However, this section of the case deals with termination of parental rights under an entirely different statute, Tenn. Code Ann. § 36-1-102(1)(A)(iv),[7] and in no way indicates that a trial court should examine Father's pre-incarceration behavior when Tenn. Code Ann. § 36-1-116(g)(6) is the alleged ground for termination. *In Re Audrey S.*, 182 S.W.3d at 868-71. In fact, the *Audrey S.* court affirmed the trial court's finding of a statutory ground for termination pursuant to Tenn. Code Ann. § 36-1-116(g)(6) in circumstances very similar to this case, stating:

> Jamie F.'s convictions . . . are entitled to a presumption of correctness unless and until they have been set aside by a court of competent jurisdiction. Thus, we have repeatedly recognized that a court considering a petition for termination of parental rights based on Tenn. Code Ann. § 36-1-116(g)(6) need not look beyond the judgment of conviction and the sentence imposed by the criminal court in order to determine whether this ground for termination applies. . . . If the mere possibility that a conviction might be reversed, or a sentence reduced, at some point in the future were sufficient to defeat the application of this ground for termination of parental rights, then Tenn. Code Ann. § 36-1-116(g)(6) would be a

---

[6]The Court of Criminal Appeals issued its opinion in Father's case in 2005. The Tennessee Supreme Court denied Father's application for permission to appeal later that year and issued its mandate on October 5, 2005. At trial, Father testified that he planned to file a motion for postconviction relief by September of 2006. Pursuant to Tenn. Code Ann. § 40-30-102(a), the statute of limitations for filing a petition for postconviction relief is one year from the date of the final action taken by the highest court to which the case was appealed. Accordingly, Father must have filed his postconviction petition by October 5, 2006, or he forfeited his right to do so. Regardless, the outcome of any postconviction proceeding is irrelevant to our determination of this case.

[7]Tennessee Code Annotated § 36-1-102(1)(A)(iv) defines "abandonment" in the context of a parental termination proceeding to include: (iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.

dead letter. We do not believe that the General Assembly intended this result.

*Id.* at 876 (internal citations omitted). In the case at bar, Father has already appealed his convictions. Although he plans to pursue postconviction relief, that does not change the plain meaning of Tenn. Code Ann. § 36-1-116(g)(6), which clearly applies to the circumstances of this case. We agree with the trial court, which stated the following to Father as it issued its ruling:

> [T]his statute is very clear. I don't know that Johnny Cochran, F. Lee Bailey, Perry Mason, whoever you had representing you could overcome what this statute says. It says very clearly if you're under a sentence of ten years or more, and at the time you were sentenced . . . the child is under eight, and that's grounds, in and of itself, with nothing else, to terminate you.
>
>         *              *              *
>
> I have been cited with no law telling me that I should wait on a postconviction relief petition, which, in my experience, is a very lengthy and very risky proposition. It is a last-ditch effort. It's an extraordinary appeal. It's after an appeal has already been lost, and you've been convicted. It's a very difficult, lengthy procedure that has not even been filed yet, and I can't hold up this little girl on something that tenuous.

We have consistently held that a trial court should not consider appeals and postconviction relief proceedings in deciding whether grounds for termination of parental rights exist pursuant to Tenn. Code Ann. § 36-1-116(g)(6). *See, e.g.*, *In re Audrey S.*, 182 S.W.3d at 876; *M.P.P. v. D.L.K.*, No. E2001-00706-COA-R3-CV, 2002 WL 459010, at *4-5 (Tenn. Ct. App. E.S., filed Mar. 26, 2002); *In re C.M.R.*, No. M2001-00638-COA-R3-JV, 2002 WL 192562, at *4 (Tenn. Ct. App. M.S., filed Feb. 7, 2002); *In re Adoption of Copeland*, 43 S.W.3d 483, 489 (Tenn. Ct. App. 2000). Accordingly, we find that the trial court correctly found a ground for termination of Father's parental rights based on Tenn. Code Ann. § 36-1-116(g)(6). We next turn to a review of whether termination of Father's parental rights was also in the best interest of M.L.P.

### B. Best Interest of Child

Father asserts that the trial court erred in finding that termination of his parental rights is in the best interest of M.L.P. Tennessee law provides that a court shall consider the following factors when determining whether termination of parental rights is in the best interest of a child:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2)  Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3)  Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4)  Whether a meaningful relationship has otherwise been established between the parent and guardian and the child;

(5)  The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6)  Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7)  Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8)  Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9)  Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i).  The factors enumerated above are not exhaustive, and "[t]he statute does not require every factor to appear before a court can find that termination is in a child's best interest." *Dep't of Children's Svcs. v. T.S.W.*, No. M2001-01735-COA-R3-PT, 2002 WL 970434, at *3 (Tenn. Ct. App. M.S., filed May 10, 2002).

The trial court heard testimony from Father and DCS case manager Jessica Kennedy.  Father testified that he had been unable to care for M.L.P. because of his incarceration, although he did send some money to the child's mother.  When asked about what kind of relationship he had with M.L.P.

before he was incarcerated, Father said, "Not much at all. My cousin had her for a while, and then, I talked to her on the phone, but that's about it." Father testified that he did not think he could contact his daughter after he went to prison, and he did not know how to contact M.L.P.'s mother during that time. Father agreed that if he were unsuccessful on his petition for postconviction relief, then he "wouldn't be in a position" to care for M.L.P.

Ms. Kennedy testified that when M.L.P. was placed into the custody of DCS, she exhibited sexualized and manipulative behavior, which resulted in her being moved to several different foster homes. However, M.L.P. has been living in a pre-adoptive home since January of 2005, and her behavior has improved significantly during that time. The foster parent wants to adopt both M.L.P. and her half-brother, who is also in DCS custody. Ms. Kennedy testified as follows regarding the effect that living in multiple homes had on M.L.P.:

> From what [M.L.P.] and I have talked about, she questioned if anybody wanted her. She got very upset when she had to be moved. So being where she's at right now has made a huge difference for her, because her foster mother is willing to adopt her and does want her as part of the family, because now she has . . . a family that she can be with.

Furthermore, Ms. Kennedy testified that she is unaware of any relationship between M.L.P. and Father; she also said that M.L.P., who was ten years old at the time of the trial, had never mentioned Father.

After considering all of the evidence, the trial court found by clear and convincing evidence that termination of Father's parental rights was in the best interest of M.L.P. The trial court stated:

> In this case, there are no allegations that [Father] abused this child. He is not accused of any specific wrong-doing [sic] with regard to this child. Indeed, he had very little opportunity to nurture or neglect his daughter. He has been almost completely unavailable to care for the child and will continue to be unavailable to care for her for the majority of her childhood. His offenses have been directed at other victims.
>
>         *                *              *
>
> This child is entitled to a safe, secure and loving home. She has experienced much disruption during her early life, being passed among relatives and then from one foster home to another . . .. She has now been in a stable, prospective adoptive home for eighteen (18) months. Her behavior has improved, her sexual acting out has disappeared, and she feels valued and wanted. This family is also proposing to adopt her half-brother. [M.L.P.] needs a chance of permanency outside the limbo of foster care.

A careful review of the record leads us to the same conclusion as the trial court. We have previously held that a lengthy delay in a child's return to the custody of its biological parent is a strong indication that termination of parental rights is in the best interest of the child, stating as follows:

> This court has frequently and for a long time recognized that, as a general proposition, a child's best interest was served by termination of parental rights where, no matter the cause, there was no reasonable expectation the child could be reunited with a parent in the near future. . . . Termination of parental rights is a prerequisite to adoption which brings with it the security and stability that is of primary importance to children.

*In re M.H.*, No. M2005-00117-COA-R3-PT, 2005 WL 3273073, at *13 (Tenn. Ct. App. M.S., filed Dec. 2, 2005). M.L.P. was six years old when Father was sentenced; if he serves his entire sentence, she will be twenty-four when he is released from prison. Even if he only serves half of his sentence, M.L.P. will have reached majority by the time he is available to care for her. Plus, he has never been M.L.P.'s caretaker; she does not know him, and there is no reason to believe that Father will be able to establish a meaningful relationship with his daughter during the remainder of his incarceration.

Taking all of this into consideration, there is ample evidence from which the trial court could find that M.L.P.'s best interest would be served by terminating Father's parental rights, thus giving the child an opportunity to be adopted by her current foster family. The alternative would be to hold a child's life in limbo for an unknown number of years on the off chance that Father might be released from prison in time to care for the daughter that he barely knows; we find this option unacceptable. Therefore, we must conclude that the evidence does not preponderate against the trial court's finding by clear and convincing evidence that termination of Father's parental rights is in the best interest of M.L.P.

## V. Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed. This case is remanded to the trial court for enforcement of the trial court's judgment terminating Father's parental rights to M.L.P. and for collection of costs assessed below, all pursuant to applicable law. Costs on appeal are adjudged against the Appellant, B.R.P.

_____
SHARON G. LEE, JUDGE