IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 20, 2012

# IN RE DAYSIA D. ET AL.[1]

**Appeal from the Juvenile Court for Humphreys County**
**No. J985511      Anthony L. Sanders, Judge**

_____

**No. M2012-00608-COA-R3-PT - Filed September 28, 2012**

_____

Mother appeals the trial court's termination of her parental rights. She asserts the trial court erred in holding that she engaged in conduct exhibiting a wanton disregard for the welfare of the children prior to her incarceration and that termination was in the children's best interest. We have determined there is clear and convincing evidence in the record to support the trial court's finding that Mother abandoned her children as proscribed by Tenn. Code Ann. § 36-1-102(1)(A)(iv) and that terminating her parental rights is in the children's best interest. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., and RICHARD H. DINKINS, JJ., joined.

Tracy Lynn Harwell, Waverly, Tennessee for the appellant, Tina Marie H. D.

Robert E. Cooper, Jr., Attorney General and Reporter, and Martha A. Campbell, Deputy Attorney General, for the appellee, State of Tennessee Department of Children's Services.

## OPINION

Tina D. ("Mother") is the biological mother of Daysia D. (born November 29, 1998), DaLynn D. (born March 16, 2006), and Ashlynn D. (born March 6, 2007).[2] Mother last had

_____

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

[2] Mother has additional children, but only the three children listed above are the subject of this

(continued...)

physical custody of her children on February 10, 2010, when she was found guilty of possessing more than one-half ounce of marijuana with intent to sell or deliver within 1000 feet of a school zone and of possessing over 0.5 grams of cocaine with intent to sell or deliver within 1000 feet of a school zone. She received an effective sentence of twenty years in the Department of Corrections for the convictions. Upon Mother's conviction, the children went to live with Angie Morris, Mother's niece and next-door neighbor. In December 2010, the children were placed in the custody of the Department of Children's Services ("DCS") when it was reported that the children were "sexually reactive with one another" while in the Morris home.

On July 15, 2011, DCS filed a petition to terminate Mother's parental rights.[3] With respect to Mother, the petition alleged the following grounds for termination of her parental rights: abandonment by an incarcerated parent pursuant to Tenn. Code Ann. § 36-1-113(g)(6) and abandonment by exhibiting a wanton disregard for the welfare of the children pursuant to Tenn. Code Ann. § 36-1-102(1)(A)(iv).

On February 10, 2012, the juvenile court held a hearing on the petition at which Julia Waskiewicz, counselor for DaLynn and Ashlynn; Teresa Burkhart, counselor for Daysia; Shelby McClurklan, team coordinator for DCS; and Mother testified. On February 28, 2012, the court entered an order terminating Mother's parental rights. Mother appeals.

STANDARD OF REVIEW

A parent's right to the care, custody, and control of their child is a recognized liberty interest protected by the federal and state constitutions. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Consequently, the state may interfere with parental rights only if there is a compelling state interest. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)).

Tennessee's termination statutes identify situations in which the state's interest in a child's welfare justifies interference with a parent's constitutional rights. *In re W.B., IV*, No. M2004-00999-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). To support the termination of parental rights, petitioners must prove both the existence of at least one of the statutory grounds for termination and that

---

[2](...continued)
appeal.

[3] The petition also sought to terminate the parental rights of the children's father; however, this appeal only concerns Mother.

termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re Audrey S.*, 182 S.W.3d 838, 860 (Tenn. Ct. App. 2005). A trial court is only required to find one statutory ground in order to terminate parental rights. *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts require individualized decision making and a higher standard of proof in deciding termination cases. *See Santosky*, 455 U.S. at 769; *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Thus, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004) (citations omitted). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id.*

In light of the heightened burden of proof required by Tenn. Code Ann. § 36-1-113(c)(1), a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *Id.* at 654. First, we review the trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* Next, we must determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Id.*

ANALYSIS

Mother argues that DCS did not present clear and convincing evidence that she engaged in conduct exhibiting a wanton disregard for the welfare of the children prior to incarceration.[4] She also contends that termination was not in the children's best interest.

_____

[4] As a second ground for termination, the trial court relied on Tenn. Code Ann. § 36-1-113(g)(6), which states as follows:

> The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court.

Mother has not specifically appealed this ground for termination in her brief. We note, however, that there

(continued...)

We will address her contentions in turn.

## Wanton Disregard

The juvenile court found that Mother abandoned the children under Tenn. Code Ann. § 36-1-102(1)(A)(iv)'s definition of abandonment:

> A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, *or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child*.

(Emphasis added). Although Tenn. Code Ann. § 36-1-102(1)(A)(iv) does not specifically define "wanton disregard," Tennessee courts have held that a parent's drug abuse and criminal activity can constitute a wanton disregard for the welfare of the child. *In re Audrey S.*, 182 S.W.3d at 867-68; *see also In re H.A.L.*, No. M2005-00045-COA-R3-PT, 2005 WL 954866, at *6 (Tenn. Ct. App. Apr. 25, 2005).

In its final order, when ruling on wanton disregard as a ground for termination, the trial court held:

> The Respondent, [Mother], engaged in such conduct prior to incarceration as to exhibit a wanton disregard for the welfare of the children. [Mother] has been convicted of Schedule VI Drugs: School Zone and Schedule II Drugs: Cocaine/Meth School Zone. [Mother's] conduct in wanton disregard for the welfare of the children was selling drugs in a school zone.

We agree that selling drugs in a school zone is conduct exhibiting a wanton disregard for the

---

[4](...continued)
is clear and convincing evidence in the record to support this ground of termination relative to DaLynn and Ashlynn, who were under eight years of age when Mother was sentenced to twenty years of imprisonment for her convictions. In light of the fact that this ground only applies to DaLynn and Ashlynn, we proceed with our analysis under Tenn. Code Ann. § 36-1-102(1)(A)(iv). *See In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003) (holding that a trial court is required to find only one statutory ground in order to terminate parental rights).

welfare of the children. Further evidence in support of this finding includes Mother's admission that she abused drugs while DaLynn and Ashlynn were present in the home, as well as her failure to properly supervise Daysia and recognize that Daysia was sexually abused by a neighbor's child. With respect to drug use in the home, Mother testified:

> Q. And you said you never did the drugs in front of them, correct?
> A. No.
> Q. Well, . . . . When did you do them?
> A. Well, I mean, all my kids were in school except for the little ones. And the little ones would be in their rooms playing. They didn't always hang up underneath me. I would go outside.
> Q. So you were using drugs while they were in the house?
> A. No. I smoked it outside. All I ever did was marijuana, and I would smoke it outside.
> Q. But you're taking care of the kids when you're doing this, correct?
> A. Well, I mean, for the most part, I just had the two little ones with me. But I wasn't impaired where I couldn't take care of my children. . . .

With respect to Daysia's sexual abuse, her therapist testified:

> Q. And what were [Daysia's] secrets that she'd been holding on to for years?
> A. Daysia reported that she had been sexually molested and raped from the time she was four years old.
> Q. Did she say by whom?
> A. She reported – yes, that it was a boy who was a son of a family friend, who was six years older than her.
> . . .
> THE COURT: Does - - this is indicating that there was neglect?
> THE WITNESS: . . . In my opinion for her to be abused before ten indicates to me that somebody wasn't paying attention to what was going on with her.

Mother's failure to provide adequate supervision for her children, her drug use, and her criminal behavior prior to incarceration constitute conduct that exhibits a wanton disregard for her children's welfare. *See In re Audrey S.*, 182 S.W.3d at 867-68. Accordingly, we affirm the juvenile court's finding that Mother abandoned her children pursuant to Tenn. Code Ann. § 36-1-102(1)(A)(iv).

## Best Interests

Having concluded that clear and convincing evidence supports the statutory ground

upon which Mother's parental rights were terminated, we must consider whether it was in the children's best interest to terminate Mother's parental rights. Tenn. Code Ann. § 36-1-113(i) contains a non-exhaustive list of factors a trial court is required to consider in making the best interest determination.[5] Every factor need not be applicable for the trial court to determine it is in the best interest of the child for a parent's rights to be terminated. *See In re Audrey S.*, 182 S.W.3d at 878. The best interest analysis is a fact-intensive inquiry requiring the court to consider the unique facts of the case. *In re Giorgianna H.*, 205 S.W.3d 508, 523 (Tenn. Ct. App. 2006).

Mother asserts the trial court erred in finding that termination was in the best interest

---

[5] The factors enumerated at Tenn. Code Ann. § 36-1-113(i) are as follows:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

of her children. Specifically, Mother urges this Court to consider the pending appeal of her convictions and argues that her potential success on appeal should be a factor weighing against termination of her parental rights.[6] Mother's argument is without merit. We have repeatedly held that a court "need not look beyond the judgment of conviction and the sentence imposed by the criminal court" when determining whether a ground for termination applies. *In re Audrey S.*, 182 S.W.3d at 876; *see also In re M.L.P.*, 228 S.W.3d 139, 145 (Tenn. Ct. App. 2007). Mother's convictions and sentences are entitled to a presumption of correctness unless and until they have been set aside. *In re Audrey S.*, 182 S.W.3d at 876. Thus, the possibility of post-conviction or appellate relief is not relevant to the consideration of whether the statutory criteria for the best interests analysis have been met in this case. *See Id.*; *In re M.L.P.*, 228 S.W.3d at 145.

Here, the trial court found clear and convincing evidence in support of its determination that termination of Mother's parental rights was in the children's best interest. In particular, the trial court noted the following facts in support of its finding: Daysia was diagnosed with reactive attachment disorder, and the younger children have suffered from abuse stemming from when they were in the home of their biological parents; Mother used drugs while her children were under her care; the children appear to have formed a bond with their current foster parents who wish to adopt them; heroic efforts have been made to address Daysia's issues and improvements have been made; and almost all of the development of the children has been positive since DCS has been involved.

Our review of the record leads us to the same conclusion as the trial court. The children's therapists testified that the children have symptoms of post-traumatic stress disorder and developmental delays from physical and sexual abuse while in their biological parent's home. *See* Tenn. Code Ann. § 36-1-113(i)(7). Mother is incarcerated for a sentence of twenty years and likely will not receive parole until 2025. *See* Tenn. Code Ann. § 36-1-113(i)(1), (3). Mother admitted to abusing drugs while the children were in the home and has been convicted of possession of marijuana and cocaine with the intent to sell or deliver within 1000 feet of a school zone. *See* Tenn. Code Ann. § 36-1-113(i)(7). The children have made positive progress both emotionally and psychologically since being placed with their foster family. *See* Tenn. Code Ann. § 36-1-113(i)(5). We conclude that clear and convincing evidence exists to support the trial court's finding that termination is in the best interest of the children.

---

[6] On June 21, 2012, the Tennessee Court of Criminal Appeals rendered a decision affirming Mother's convictions and twenty-year sentence. *State v. [D.]*, No. M2010-02382-CCA-R3-CD, 2012 WL 2356523 (Tenn. Crim. App. June 21, 2012). Mother has since filed an appeal to the Tennessee Supreme Court.

CONCLUSION

For the aforementioned reasons, we affirm the judgment of the trial court and assess the costs of this appeal against Mother.  Execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE