IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 1, 2017

**IN RE HOMER D., ET AL.**

**Appeal from the Juvenile Court for Overton County**
**No. 16-JV-74       Daryl A. Colson, Judge**

_____

**No. M2017-00298-COA-R3-PT**

_____

This is a termination of parental rights case. The trial court terminated Appellant's parental rights on the grounds of: (1) abandonment by willful failure to support; (2) persistence of the conditions that led to the children's removal; and (3) substantial noncompliance with the requirements of the permanency plans. The trial court also found that termination of Appellant's parental rights was in the children's best interest. On appeal, the Tennessee Department of Children's Services concedes that the persistence of conditions ground is not applicable to Appellant. We agree and accordingly reverse the trial court's reliance on that ground for termination. Although we also reverse the trial court's finding of abandonment, because it is only necessary that one ground for termination be established, the trial court's termination order is otherwise affirmed.

**On Remand from the Supreme Court; Judgment of the Juvenile Court**
**Reversed in Part, Affirmed in Part, and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined.

Matthew S. Bailey, Sparta, Tennessee, for the appellant, Sarah R. P. B.
Herbert H. Slatery, III, Attorney General and Reporter; and Brian A. Pierce, Assistant Attorney General, for appellees, Bryan C. D. and Tennessee Department of Children's Services.

**OPINION**

**BACKGROUND AND PROCEDURAL HISTORY**

This termination of parental rights case is on remand from the Tennessee Supreme Court for consideration on the merits. In our initial review of the case, we determined

that this Court lacked subject-matter jurisdiction over the appeal based on the absence of a timely notice of appeal signed by the Appellant. In its recent decision, *In re Bentley D.*, No. E2016-02299-SC-RDO-PT, 2017 WL 5623577 (Tenn. Nov. 22, 2017), the Tennessee Supreme Court held that the signature requirement contained in Tennessee Code Annotated section 36-1-124(d), requiring the appellant to sign the notice of appeal, was satisfied by the appellant's attorney's signature on the notice of appeal. In this case, the original notice of appeal, which was timely filed, was signed by the Appellant's attorney. Accordingly, under the holding in *In re Bentley D.*, this Court has jurisdiction to adjudicate this appeal on its merits. We now turn to that task.

In this appeal, we address the termination of parental rights of S.P.B. ("Mother") to her two children, C.D. and H.D. ("the children").[1] C.D. was born in November 2012. H.D. was born in May 2014.

A little over a year after H.D.'s birth, in June 2015, the Tennessee Department of Children's Services ("the Department") received a referral alleging, among other things, that the children's grandmother had "been using and selling pain pills and subutex." The Department looked into the matter, and on June 18, 2015, it filed a petition in the Overton County Juvenile Court to declare the children dependent and neglected. According to the dependency and neglect petition, a Department case manager had located the children at the home of the children's grandmother. The home's basement allegedly had standing water with mold, and the petition stated that the children's grandmother had tested positive for buprenorphine and amphetamine after submitting to a drug screen. The children's grandmother denied knowledge of Mother's whereabouts and claimed to have had no contact with Mother since July 2014. The petition stated that a case manager subsequently met with Mother at the Overton County Jail on June 17. During this meeting, Mother allegedly admitted to a long history of drug use.

The children were placed in the Department's custody in light of the allegations set forth in the dependency and neglect petition, and eventually, both were adjudicated dependent and neglected.[2] Following their removal from their grandmother's home, family permanency plans were created. The first permanency plan, which was developed on July 14, 2015, was ratified by the Juvenile Court on November 18, 2015. This plan contained several requirements for Mother, including the following: (1) participate in therapeutic supervised visitation with the children; (2) contact the child support office to set up payments; (3) keep weekly contact with the Department; (4) maintain steady housing for at least six months; (5) provide proof of legal income; (6) submit to drug screens; (7) complete a psychological evaluation with a parenting component and follow recommendations; (8) complete an alcohol and drug assessment and follow

---

[1] In cases involving minor children, it is this Court's policy to redact names sufficient to protect the children's identities.

[2] The children were adjudicated dependent and neglected by order entered on November 4, 2015.

recommendations; and (9) sign releases so that the Department can receive information and be able to talk to service providers. A revised permanency plan containing these same requirements was ratified in February 2016.

During the period following the children's entry into the Department's custody, the Department struggled to maintain communication with Mother and monitor her compliance with the permanency plan requirements. For example, in an affidavit filed with the Juvenile Court in November 2015, a Department case manager indicated that Mother had revoked the release that would allow the Department to access Mother's assessments from service providers. The same affidavit also detailed some of the Department's failed efforts to stay in contact with Mother. Subsequent to the filing of this affidavit, by order entered on December 2, 2015, the Juvenile Court suspended Mother's visits with the children "due to her lack of contact with the Department, lack of contact with her attorney and lack of cooperation." Later, pursuant to an "Annual Permanency Hearing Order" entered on May 4, 2016, the Juvenile Court determined that Mother was not in substantial compliance with the current permanency plan "in that [she] failed to maintain contact with the Department."

On July 15, 2016, the Department filed a petition to terminate Mother's parental rights.[3] As specific grounds for the termination, the Department asserted that Mother was in substantial noncompliance with the provisions of the permanency plans and that she had abandoned the children by willfully failing to support them.[4] The petition also averred that it was in the best interest of the children to terminate Mother's parental rights.

A hearing on the Department's termination petition was held on December 20, 2016. At the time of trial, Mother was incarcerated. According to her testimony, she had been incarcerated for several months on account of past indictments.

In large part, the proof at the hearing focused on Mother's failure to maintain contact with the Department and her lack of compliance with the requirements of the permanency plans. Proof was also offered regarding the status of the children and their well-being since having come into the Department's custody. To this end, the children's foster mother specifically testified that the children seemed well-adjusted and bonded in her home. Although the children allegedly had behavior issues when they entered her home, the foster mother testified that these issues had "got[ten] a lot better." Upon the

---

[3] The Department also sought to terminate the parental rights of the children's father. Although the father's parental rights were eventually terminated, his rights are not at issue in this appeal.

[4] Although a persistence of conditions ground for termination was not clearly pled, some language from Tennessee Code Annotated section 36-1-113(g)(3) did appear in the petition. However, as explained herein, the Department has conceded on appeal that this ground for termination is not applicable to the facts of this case.

conclusion of the hearing, the Juvenile Court orally ruled that the Department had met its burden of proof regarding the grounds for termination.

A final decree memorializing the Juvenile Court's oral ruling was entered on January 4, 2017. In its final decree, the Juvenile Court found (1) that Mother had willfully failed to support the children for the four months immediately preceding the filing of the petition to terminate, (2) that Mother's parental rights should be terminated pursuant to the persistence of conditions ground codified at Tennessee Code Annotated section 36-1-113(g)(3), and (3) that Mother had been "substantially non-compliant with the statement of responsibilities in the permanency plans." The Juvenile Court further determined that there was clear and convincing evidence that termination was in the children's best interest. This appeal followed the entry of the final decree.

### ISSUES PRESENTED

In her appellate brief, Mother raises the following three issues related to the termination of her parental rights:[5]

- Whether the juvenile court improperly determined that Appellant abandoned her children by failing to support them.

- Whether the juvenile court improperly determined that Appellant did not substantially comply with the permanency plan.

- Whether the juvenile court improperly concluded that the termination of Appellant's parental rights was in the children's best interests.

Although Mother did not specifically challenge the Juvenile Court's determination that her parental rights should be terminated based on the persistence of conditions ground, her failure to do so does not curb our review on appeal. In order to "ensure that fundamental parental rights are not terminated except upon sufficient proof, proper findings, and fundamentally fair procedures," we are required to review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interest. *See In re Carrington H.*, 483 S.W.3d 507, 525-26 (Tenn. 2016) ("[I]n an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal."). Accordingly, our discussion will not be restricted to the specific issues delineated in Mother's brief.

---

[5] Although Mother's brief also raises two issues concerning the signature requirement in Tennessee Code Annotated section 36-1-124(d), the signature requirement is no longer at issue as noted previously.

## STANDARD OF REVIEW

"A biological parent's right to the care and custody of his or her child is among the oldest of the judicially recognized liberty interests protected by the due process clauses of the federal and state constitutions." *In re M.L.P.*, 228 S.W.3d 139, 142 (Tenn. Ct. App. 2007) (citations omitted). "Although this right is fundamental and superior to claims of other persons and the government, it is not absolute." *In re J.C.D.*, 254 S.W.3d 432, 437 (Tenn. Ct. App. 2007) (citation omitted). "It continues without interruption only as long as a parent has not relinquished it, abandoned it, or engaged in conduct requiring its limitation or termination." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004) (citations omitted). In Tennessee, "[w]ell-defined circumstances exist under which a parent's rights may be terminated." *In re Roger T.*, No. W2014-02184-COA-R3-PT, 2015 WL 1897696, at *6 (Tenn. Ct. App. Apr. 27, 2015), *no perm. app. filed*. Pursuant to the Tennessee Code, parties who have standing to seek the termination of a parent's parental rights must prove two things. First, they must prove at least one of the statutory grounds for termination. *In re J.C.D.*, 254 S.W.3d at 438 (citing Tenn. Code Ann. § 36-1-113(c)(1)). Second, they must prove that termination of parental rights is in the child's best interests. *Id.* (citing Tenn. Code Ann. § 36-1-113(c)(2)).

Because the decision to terminate a parent's parental rights has "profound consequences," trial courts must apply a higher standard of proof in deciding termination cases. *In re M.L.P.*, 228 S.W.3d at 143. "To terminate parental rights, a court must determine that clear and convincing evidence proves not only that statutory grounds exist but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). "Clear and convincing evidence is evidence that eliminates any substantial doubt and that produces in the fact-finder's mind a firm conviction as to the truth." *In re M.A.B.*, No. W2007-00453-COA-R3-PT, 2007 WL 2353158, at *2 (Tenn. Ct. App. Aug. 20, 2007) (citation omitted). This heightened burden of proof "minimizes the risk of erroneous decisions." *In re M.L.P.*, 228 S.W.3d at 143 (citations omitted).

Due to the heightened burden of proof required under the statute, we must adapt our customary standard of review. *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005). "First, we must review the trial court's specific findings of fact de novo in accordance with Tenn. R. App. P. 13(d)." *In re M.J.B.*, 140 S.W.3d at 654. "Second, we must determine whether the facts, either as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements required to terminate a biological parent's parental rights." *Id.* (citations omitted).

## DISCUSSION

As noted previously, when the trial court entered its final decree, it found that the following grounds existed for terminating Mother's parental rights: (1) abandonment by

willful failure to support, (2) persistence of the conditions that led to the children's removal; and (3) failure to substantially comply with the requirements of the permanency plans. Although we are required to review each ground for termination found by the trial court, *In re Carrington H.*, 483 S.W.3d at 525-26, we ultimately need only find that one ground for termination was established in order to uphold the trial court's decision. *In re Valentine*, 79 S.W.3d at 546. We will review each ground in turn.

## **Abandonment**

The first ground for termination listed in our termination statute, and the most frequently relied on, is abandonment. *In re Audrey S.*, 182 S.W.3d at 862. The acts that constitute abandonment are outlined in Tennessee Code Annotated section 36-1-102, which provides five alternative definitions. In this case, the Department alleged that Mother had abandoned the children by failing to support them. The Juvenile Court agreed with the Department on this issue and found that the proof established Mother's abandonment pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(i). This basis for termination, which comprises the first definition of abandonment under section 36-1-102(1)(A), is defined as follows:

(i)      For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A)(i). Under the statute, "willfully failed to support" or "willfully failed to make reasonable payments toward such child's support" means the "willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more than token payments toward the support of the child." Tenn. Code Ann. § 36-1-102(1)(D). Token support is defined as "support, [that] under the circumstances of the individual case, is insignificant given the parent's means." Tenn. Code Ann. § 36-1-102(1)(B).

"'Willfulness' does not require the same standard of culpability required by the penal code." *In re S.M.*, 149 S.W.3d 632, 642 (Tenn. Ct. App. 2004) (citation omitted). "Failure to support a child is 'willful' when a person is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide the support, and has no justifiable excuse for not providing the support." *Id.* (citations omitted). "Simply proving that a parent did not pay financial support for her child during the pertinent four-month period is not sufficient to show willful failure to support." *In re Keri C.*, 384 S.W.3d 731, 746 (Tenn. Ct. App. 2010) (citation omitted).

In this case, we are of the opinion that the proof on this issue fails to satisfy the scrutiny imposed by the clear and convincing evidence standard. Although testimony was offered that Mother had not made any support payments the entire time that the children were in the Department's custody, a family service worker with the Department agreed that, given the frequency of Mother's incarcerations, her periods of non-incarceration were not as often as it would take to get a job. Given this representation, we cannot conclude that there is clear and convincing evidence to support the finding that Mother's failure to support the children was willful. We therefore reverse the Juvenile Court's reliance on this ground for termination.

**<u>Persistence of Conditions</u>**

Tennessee Code Annotated section 36-1-113(g)(3) outlines the ground for termination commonly known as "persistence of conditions." It applies where the following elements are present:

> (3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
> (A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent or parents or the guardian or guardians, still persist;
> (B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or parents or the guardian or guardians in the near future; and
> (C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home[.]

Tenn. Code Ann. § 36-1-113(g)(3). "A finding on the ground of persistence of conditions is not appropriate unless DCS presents clear and convincing evidence to establish each statutory element." *In re B.A.C.*, 317 S.W.3d 718, 725 (Tenn. Ct. App. 2009) (citation omitted). The purpose behind this ground "is to prevent the child's lingering in the uncertain status of foster child if a parent cannot within a reasonable time demonstrate an ability to provide a safe and caring environment for the child." *In re D.C.C.*, No. M2007-01094-COA-R3-PT, 2008 WL 588535, at *9 (Tenn. Ct. App. Mar. 3, 2008).

As this Court has recently discussed, "[a]s a threshold requirement for applicability of the ground of persistence of conditions in termination of parental rights cases, the child must . . . have been removed from the defendant parent's home." *In re Nevaeh B.*, No. W2016-01769-COA-R3-PT, 2018 WL 896070, at *10 (Tenn. Ct. App. Feb. 14, 2018). Here, the proof is not sufficient to establish this threshold requirement

because the record reveals that the children were removed from the home of their grandmother. We specifically observe that during the trial of this case, one of the Department's family service workers expressly stated that "[Mother] did not live at the home the children were removed from." The Department concedes in its appellate brief that this ground for termination is not applicable, and given our agreement on this issue due to the absence of appropriate proof, we reverse the Juvenile Court's order as it relates to the persistence of conditions ground.

## Substantial Noncompliance with the Requirements of the Permanency Plans

Pursuant to Tennessee Code Annotated section 36-1-113(g)(2), a court may terminate a parent's parental rights when the parent is in "substantial noncompliance . . . with the statement of responsibilities in a permanency plan." Tenn. Code Ann. § 36-1-113(g)(2). In conjunction with terminating a parent's parental rights under this ground, the court "must first find that the plan requirements are reasonable and related to conditions that necessitate foster care placement." *In re Hannah H.*, No. E2013-01211-COA-R3-PT, 2014 WL 2587397, at *10 (Tenn. Ct. App. June 10, 2014) (citations omitted). "The trial court must then find that the noncompliance is substantial." *Id.* (citation omitted). Although the termination statute does not define what conduct constitutes substantial noncompliance, terminating parental rights under this ground "requires more proof than that a parent has not complied with every jot and tittle of the permanency plan." *In re M.J.B.*, 140 S.W.3d at 656. The significance of the noncompliance "should be measured by both the degree of noncompliance and the weight assigned to that requirement." *In re Valentine*, 79 S.W.3d at 548. "Terms which are not reasonable and related are irrelevant, and substantial noncompliance with such terms is irrelevant." *Id.* at 548-49. Because determining whether substantial noncompliance exists is a question of law, we review the issue de novo with no presumption of correctness. *Id.* at 548.

As noted previously, the permanency plans developed in this case set forth several requirements for Mother. The requirements were directed to ensuring that Mother addressed her drug problems and were also tailored to allow Mother to demonstrate an ability to lead a stable life. Among other things, Mother was required to maintain steady housing, provide proof of legal income, contact the child support office to set up payments, participate in therapeutic supervised visitation, complete a psychological evaluation and follow recommendations, and complete an alcohol and drug assessment and follow recommendations. She was also required to keep weekly contact with the Department and sign releases allowing the Department to receive information from service providers. In this case, the Juvenile Court concluded that all of these requirements were reasonably related to remedying the conditions that necessitated foster care, but it found that compliance with the alcohol and drug assessment was "particularly important in reducing the risk of harm to the children." After finding that the requirements in the permanency plans had simply not been completed, the Juvenile Court

concluded that Mother was substantially noncompliant pursuant to Tennessee Code Annotated section 36-1-113(g)(2).

The record supports the Juvenile Court's determination regarding this ground for termination. At trial, Jenna Vaughn, a family service worker with the Department, testified that Mother had not completed any of the requirements of the permanency plans. At one point in her testimony, moreover, she specifically stated that "[n]one of the actions steps . . . were followed." Although Ms. Vaughn identified the need to remedy substance abuse concerns as the most important aspect of the permanency plans, she stated that she did not have any documentation as to whether anything was completed. As explained in further detail below, the Department's inability to monitor Mother's compliance with the permanency plans is largely attributable to Mother's demonstrated lack of cooperation with the Department.

Remaining in weekly contact with the Department was an express requirement of the permanency plans, but the proof shows that Mother failed to do so in this case. Ms. Vaughn generally testified as to periods when, despite her own efforts, she failed to remain in contact with Mother, and another family service worker, Lindsay Witcher, testified to similar difficulties. In addition to being a direct violation of the permanency plans, Mother's failure to remain in contact with the Department affected her compliance with other requirements. Ms. Witcher, for instance, attempted to arrange for therapeutic supervised visitation with the children through Health Connect. Although participation in therapeutic supervised visitation was required by the permanency plans, the Juvenile Court suspended Mother's visits by an order entered in December 2015 due to her "lack of contact with the Department" and "lack of cooperation."[6] According to Ms. Witcher's testimony, Mother had already missed two scheduled "parent/child visits" prior to this suspension of visitation.

Mother's lack of cooperation was not limited to her failure to remain in regular contact with the Department. It also manifested itself in her failure to provide releases that would allow the Department to receive information from service providers. Although Mother was required to sign such releases under the terms of the permanency plans, the proof shows that she failed to comply with this requirement. As explained below, this failure in turn hindered the Department's ability to review whether other requirements of the permanency plan had been fulfilled.

In support of her contention that the Juvenile Court's substantial noncompliance determination was in error, Mother argues on appeal that the most important object of the permanency plans, i.e., addressing her substance abuse, was "arguably dealt with"

---

[6] This result was certainly consistent with Ms. Vaughn's observation that Mother's failure to keep in contact with the Department was a significant roadblock to accomplishing the tasks of the permanency plans.

through her participation in a program with Next Door. There is no dispute that Mother participated in a program with Next Door, and Ms. Witcher testified on direct examination that Mother "completed a psychological and . . . completed an A&D assessment." Ms. Witcher further testified that Mother "did two out of six parenting classes and two anger management classes." This information notwithstanding, the Department was not able to evaluate whether Mother fully complied with all recommendations stemming from her alcohol and drug assessment and psychological evaluation. In fact, Ms. Witcher specifically stated that the Department "could not receive any of the documents [from Next Door] because [Mother] revoked her release for the Department before she left."

In any event, Mother's own testimony establishes that she did not follow all the recommendations of the alcohol and drug assessment. On cross-examination, Mother admitted that she had been recommended to start an intensive outpatient program ("IOP") as a result of her alcohol and drug assessment. When asked if she had started IOP, Mother responded as follows: "I didn't." According to the Department's proof, Mother had never even contacted the IOP provider to schedule it.

In light of the foregoing discussion and the proof presented at trial, we conclude that there is clear and convincing evidence to support the Juvenile Court's finding that Mother was in substantial noncompliance with the requirements of the permanency plans. The proof put on by the Department clearly and convincingly showed that Mother had not completed the permanency plan requirements. She did not have stable housing or proof of a stable income, and her visitations with the children had been suspended despite efforts by the Department to arrange for therapeutic supervised visitation. Mother also failed to cooperate with the Department. The proof shows that she did not keep weekly contact with the Department as required, and notwithstanding the requirement that she sign releases so that the Department could receive information from service providers, she revoked her release from Next Door. Moreover, although compliance with the alcohol and drug assessment was particularly important in this case, Mother's testimony demonstrates that she did not follow the recommendation to begin IOP. This ground for termination is therefore affirmed.

## Best Interests

Despite our conclusion that a statutory ground for termination exists, such proof does not by itself justify the termination of a parent's parental rights. "Because not all parental conduct is irredeemable, Tennessee's termination of parental rights statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interest." *In re Jacobe M.J.*, 434 S.W.3d 565, 573 (Tenn. Ct. App. 2013) (citation omitted). As such, "[w]hen at least one ground for termination of parental rights has been established, the petitioner must then prove, by clear and convincing evidence,

that termination of the parent's rights is in the child's best interest." *Id.* at 572 (citing *White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 2004)).

When conducting a best interests analysis, conflicts between the interests of the parent and child are to be resolved in "favor of the rights and best interest of the child." *Id.* at 573 (citing Tenn. Code Ann. § 36-1-101(d)). Importantly, the best interests analysis "must be viewed from the child's, rather than the parent's, perspective." *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (citations omitted). In Tennessee, the Legislature has codified a list of nine, non-exclusive factors that trial courts are to consider when conducting a best interests inquiry in termination of parental rights proceedings. These factors are as follows:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "Ascertaining a child's best interests does not call for a rote examination" of these factors, and "depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." *In re Audrey S.*, 182 S.W.3d at 878 (citing *Moody*, 171 S.W.3d at 194).

In support of its determination that terminating Mother's parental rights was in the children's best interests, the Juvenile Court found that: (1) Mother had failed to make an adjustment of circumstances, conduct or conditions as to make it safe and in the children's best interest to be in her home, (2) Mother had failed to effect a lasting adjustment after reasonable efforts by available social agencies for such duration of time that lasting adjustment did not reasonably appear possible, (3) Mother had not maintained regular visitation with the children, (4) a meaningful relationship had not been established between the children and Mother, (5) Mother had failed to address her substance abuse issues which was the cause of bringing the children into custody, (6) Mother had not paid child support consistently with the child support guidelines, (7) Mother had not paid a reasonable portion of the children's substitute physical care and maintenance when financially able to do so, (8) Mother had shown little or no genuine interest in the welfare of the children and had refused to maintain contact with the Department, (9) the children were in a foster home that wished to adopt them, and (10) that C.D.'s behaviors had improved tremendously and that H.D.'s perceived developmental delays had greatly improved.

Having reviewed the record transmitted to us on appeal, we conclude that the Juvenile Court's findings are supported by the evidence. As we have noted, although the Department attempted to arrange for therapeutic supervised visitation with the children, Mother's visitations were suspended when she failed to remain in contact with the Department. Moreover, according to Ms. Vaughn's testimony, Mother did not contribute to the children's physical care or maintenance, nor did she show interest in the welfare of the children. In fact, Ms. Vaughn testified that Mother never made any inquiry to the Department concerning how the children were doing in foster care.

There is no question that Mother's history with drugs has presented a barrier to reunification with the children. Although Mother argues on appeal that "her treatment for substance abuse" weighs against the termination of her parental rights, it should be noted

that Mother never participated in IOP as recommended following her alcohol and drug assessment. Her asserted commitment to recovery notwithstanding, the permanency plans made clear that Mother was to follow and complete all recommendations from her drug assessment.

At the time of trial, Mother testified that she was incarcerated for past indictments. Although she expected those indictments to be dismissed the following January, she also testified that she had applied and been accepted to Team Challenge. Mother expressed a desire to enter this program following her release. Although we commend Mother for choosing to pursue programs to improve herself, the children need permanency in their lives. According to Mother, the Team Challenge program could last up to a year. When asked who would take care of the children while she was in the Team Challenge program, Mother responded as follows: "I don't know. I guess the foster parents."

When the interests of a child and the parents diverge, the best interests of the child must prevail. *In re M.H.*, No. M2005-00117-COA-R3-PT, 2005 WL 3273073, at \*10 (Tenn. Ct. App. Dec. 2, 2015) (citations omitted). Here, the proof shows that the children are well-adjusted and bonded in their foster home and have improved since coming into foster care. Whereas it was previously suspected that H.D. was developmentally delayed, Ms. Vaughn testified that H.D. is now back on track developmentally. Whereas C.D. previously "threw frequent fits," "hit her brother," and "threw things," she now reportedly does not exhibit any of these behaviors. The foster mother also testified that she was willing to adopt the children should they become available for adoption. From the totality of the circumstances and the record, we conclude that there is clear and convincing evidence that the termination of Mother's parental rights is in the children's best interest.

## CONCLUSION

For the foregoing reasons, we reverse the Juvenile Court's finding of abandonment and its reliance on the persistence of conditions ground for termination. The termination order is otherwise affirmed. Costs of this appeal are assessed against the Appellant, S.P.B. Because the Appellant is proceeding *in forma pauperis* in this appeal, execution may issue for costs if necessary. This case is remanded for the collection of costs, enforcement of this Court's judgment, and for such further proceedings as are necessary and consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE