IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 12, 2013 Session

# JAMIE AND FRANKYE T. v. CRYSTAL G. [1]

**Appeal from the Chancery Court for Maury County**
**No. 06082      Stella L. Hargrove, Chancellor**

---

**No. M2012-02225-COA-R3-PT - Filed April 29, 2013**

---

Mother appeals the termination of her parental rights for abandonment by willful failure to visit, contending that her failure to visit the children was not willful and that termination of her parental rights was not in the children's best interest. Discerning no error, we affirm the judgment terminating her parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P. J., M. S., and FRANK G. CLEMENT, JR., J., joined.

R. Holland Matthews, Columbia, Tennessee, for the Appellant, Crystal G.

Michael D. Cox and Seth M. Lasater, Columbia, Tennessee, for the Appellees, Jaime and Frankye T.

## OPINION

This appeal arises out of an action to terminate the parental rights of Crystal G. ("Mother") brought by Jamie T. ("Father") and Frankye T. ("Stepmother"); Mother appeals the termination of her parental rights on the basis of abandonment by failure to visit. Mother does not contest the fact that she did not visit for a period of two years, but argues instead that her failure to visit was not willful. Mother also appeals the holding that termination of her parental rights is in the children's best interest.

---

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

## I. Facts and Procedural History

Mother and Father are the parents of two children born of their marriage. When Mother and Father were divorced in 2006, Father was named primary residential parent with Mother being granted parenting time of 77 days per year. In 2006, Father married Frankye T. ("Stepmother"); Mother also remarried.

On February 11, 2010, Father filed a pro se petition requesting that the "Judge speak privately with children to determine best course of action"; the petition alleged that Mother made disparaging comments about Father and Stepmother to the children and was in contempt. A hearing was set for February 22; Mother did not appear. Father testified and the court thereafter entered an order in which it found Mother in willful contempt and ordered that all visitation between Mother and the children be stopped until Mother petitioned the court and appeared for a hearing. The court also ordered Mother not to contact the children "in person, by phone, or by email." Mother did not petition the court after receiving notice that her visitation had been suspended.

On February 1, 2012, Father filed a pro se petition requesting "that Mother willingly recind [sic] parental rights and responsibilities" or that the "court revoke Mother's parental rights and responsibilities in order for Stepmother to legally adopt children." The petition alleged that Mother was past due on her child support obligation and had failed to show interest in regaining visitation with the children since the entry of the 2010 no contact order. Following a hearing on February 27, the court entered an order appointing counsel for Mother and a guardian ad litem for the children and continuing the trial on the petition.

On March 15, 2012 Father filed a motion to amend his petition to comply with the applicable rules of pleading and procedure and to allow Stepmother to intervene; the motion was granted. The amended petition alleged that Mother had willfully and voluntarily abandoned the children "as that term is defined in Tennessee Code Annotated § 36-1-102(1)(A)" and asserted that Mother failed to support the children financially. Mother answered the amended petition on April 4 denying that grounds existed to terminate her parental rights and denying that termination was in the children's best interest. On June 19 Father and Stepmother moved to further amend the petition to include the allegation that Mother willfully and voluntarily failed to visit the children; the court granted the motion.

The matter was heard on August 16, 2012. On September 13 the court entered an order holding that Mother willfully failed to visit the children from October 1, 2011 to

February 1, 2012, and that termination was in the best interest of the children; the court terminated Mother's parental rights.[2]

## II. Analysis

A parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only if there is a compelling state interest. *Nash-Putnam*, 921 S.W.2d at 174–75 (citing *Santosky v. Kramer,* 455 U.S. 745 (1982)). Our termination statues identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (citing Tenn. Code Ann. § 36-1-113(g)). A party seeking to terminate the parental rights of a biological parent must prove at least one of the statutory grounds for termination. Tenn. Code Ann. § 36-1-113(c)(1); *In re D.L.B.*, 118 S.W.3d 360, 366–67 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Secondly, the party must prove that termination of the parental rights of the biological parent is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky v. Kramer*, 455 U.S. 745, 766–69 (1982); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Thus, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). In light of the heightened standard of proof in termination cases, a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004). As to the court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Id.*

Abandonment is set forth as one of the grounds for termination of parental rights by Tenn. Code Ann. § 36-1-113, and is defined as follows:

---

[2] The court held that there was insufficient evidence to find willful failure to support.

For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit . . . the child.

Tenn. Code Ann. § 36-1-102(1)(A)(i). To prove the ground of abandonment for failure to visit, a petitioner must establish by clear and convincing evidence that a parent who failed to visit "had the capacity to do so, made no attempt to do so, and had no justifiable excuse for not doing so." *In re Adoption of Angela E., et al.*, No. W2011-01588-SC-R11-PT, 2013 WL960626, at *3, __ S.W.3d __, __ (Tenn. Mar. 13, 2013). Whether a parent's failure to visit constitutes willful abandonment is a question of law. *Id.*

Mother contends that her failure to visit over a two year period was not willful because she did not want to violate the court's 2010 no contact order. Mother asserts that her educational level,[3] lack of financial resources, and "unfamiliarity and apprehension" with the court led her to believe that challenging the court's order and regaining visitation was not "within her power." Mother states that she was unable to challenge the order because she lacked the $97 fee required to file the petition to return to court, did not know that such fees could be waived, and did not have the financial resources to hire an attorney, which she believed was necessary to challenge the order. Mother argues that her failure to visit was not willful as a result of these factors.

In *In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005), this Court discussed willfulness in the context of termination cases:

The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child under Tenn. Code Ann. § 36–1–102(1)(A)(i) unless the parent has either "willfully" failed to visit . . . . In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of culpability as is required by the penal code. Nor does it require malevolence or ill will. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is

---

[3] The record shows that Mother has a ninth grade education and has completed her GED. Mother testified that she does not have any trouble reading or writing the English language and that she understood the meaning of contempt.

doing. . . . Failure to visit or support a child is "willful" when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so. Failure to visit or to support is not excused by another person's conduct unless the conduct actually prevents the person with the obligation from performing his or her duty . . . or amounts to a significant restraint of or interference with the parent's efforts to support or develop a relationship with the child. The parental duty of visitation is separate and distinct from the parental duty of support. Thus, attempts by others to frustrate or impede a parent's visitation do not provide justification for the parent's failure to support the child financially.

The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*Id.* at 863–64 (citations and footnotes omitted). In *In re Adoption of Angela E., et al.*, our Supreme Court held that an order suspending a parent's visitation rights does not preclude a finding that a parent's failure to visit was willful. *In re Adoption of Angela E., et al.*, __ S.W.3d at __.

In its order, the trial court made numerous findings that Mother was not credible, specifically with reference to Mother's factual assertions in support of her contention that her failure to visit was not willful. The court stated in relevant part:

[Mother] testified that once she got a copy of the [2010] Order she was brokenhearted and frustrated. She stated that she contacted the Clerk & Master's office three weeks after the Order was entered, and was told she needed $97 to file a petition to get into court. [Mother] testified that she did not have $97. Between approximately March, 2010, and February, 2012, [Mother] did not file anything. She testified that she called attorneys, talked to lay people, and searched the internet for help.

[Mother] stated that she never stopped trying to find a way to get into court after the no contact Order was issued. The Court does not believe this.

* * *

[Mother] never sought any advice on filing as an indigent person. She told the Court that she did not understand the word "indigent" until the Petition to Terminate was filed. The Court does not believe [Mother].

-5-

[Mother] insists that she could not come up with $97 to get back into Court; yet she did not give up buying cigarettes and she, with the help of family and friends, came up with over $1,200 to get out of jail in less than twelve hours.

The court concluded that it had "difficulty with [Mother's] credibility on so many levels," and ultimately held that Mother "willfully failed to visit her children" during the relevant four month period.

As an appellate court we are obliged to yield to credibility determinations made by the trial court. With regard to credibility determinations, this Court has stated:

When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings. Further, "[o]n an issue which hinges on the credibility of witnesses, the trial court will not be reversed unless there is found in the record clear, concrete, and convincing evidence other than the oral testimony of witnesses which contradict the trial court's findings."

*In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citations omitted). This is a mandate to which we adhere.

We have reviewed the record and find no evidence that would cause us to question the trial court's finding that Mother was not credible in her assertions that she made efforts to regain visitation, that she could not navigate the court system, or that her financial situation prevented her from challenging the court's order. Mother's lack of credibility undermines the factual bases of her contention that her failure to visit was not willful. The court's factual determinations regarding her credibility are supported by the proof and, affording those court's credibility determinations appropriate deference, clearly and convincingly support the court's determination that Mother's failure to visit was willful within the meaning of the statute.

Once a ground for termination has been proven by clear and convincing evidence, the trial court must then determine whether it is the best interest of the child for the parent's rights to be terminated, again using the clear and convincing evidence standard. The legislature has set out a list of factors at Tenn. Code Ann. § 36-1-113(i) for the courts to

follow in determining the child's best interest.[4]   The list of factors in the statute is not exhaustive, and the statute does not require every factor to appear before a court can find that termination is in a child's best interest.  *See In re S.L.A.*, 223 S.W.3d 295, 301 (Tenn. Ct. App. 2006) (citing *Tenn. Dep't of Children's Servs. v. T.S.W.*, No. M2001-01735-COA-R3-CV, 2002 WL 970434, at *3 (Tenn. Ct. App. May 10, 2002); *In re I.C.G.*, No. E2006-00746-COA-R3-PT, 2006 WL 3077510, at *4 (Tenn. Ct. App. Oct. 31, 2006)).

The court made the following findings in holding that termination of Mother's parental rights was in the best interest of the children:

> [Mother] testified that she had always been there for the children.  Yet she would bring the children home early on the weekends when her male friend, now husband, wanted to spend the night with her.  The Court believes the testimony of [Father] that [Mother] would cancel visitation at the last

---

[4]  The factors at Tenn. Code Ann. § 36-1-113(i) are:

In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;
(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or
(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

minute or simply not show up, leading to anger and emotional turmoil for the children.

        [Stepmother] has been there for the children for the past two years. . . . [Stepmother] has played a nurturing role in their lives for six years. The children appear to have a loving and stable home. They are excellent students.

        The Court recalls [Mother's] words that "this whole situation is crap. The children are scared, brainwashed and mistreated. I've gotten a raw deal." The Court finds nothing in the proof to support [Mother's] claims.

        The Court finds that the trip to Atlanta and the drinking in which the Court finds she participated, meant more to [Mother] than her children. The Court finds that overnight visits with her male friend meant more to her than her children. The Court finds that cigarettes still mean more to her than her children.

        The Court finds that a change of caretakers and physical environment is likely to have a detrimental emotional and psychological effect on both children.

        The Court is concerned whether a meaningful relationship can be reestablished between [Mother] and [the older child], at age 17. The Court is equally concerned whether a meaningful relationship can be established between [Mother] and [the younger child], considering the emotional turmoil she has gone through.

        [Mother] has failed to pay child support consistent with the child support guidelines. The Court notes . . . that her weekly payments somehow increased considerably in March of 2012 after she was served with the Petition to Terminate.

We have reviewed the evidence and it does not preponderate against these findings of fact. The record clearly and convincingly supports the court's holding that termination of Mother's rights is in the children's best interest.

### III. Conclusion

        For the foregoing reasons, we affirm the decision of the trial court terminating Mother's parental rights.

                                      _____

                                        RICHARD H. DINKINS, JUDGE