FILED
09/12/2022
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 1, 2022

**IN RE GRAYSON M.**

**Appeal from the Chancery Court for Carter County**
**No. 30820    John C. Rambo, Chancellor**

_____

**No. E2021-00893-COA-R3-PT**

_____

This is a termination of parental rights case. The trial court terminated mother's parental rights to her child on multiple grounds. Specifically, the trial court determined that mother had abandoned her child and failed to manifest an ability and willingness to care for the child or assume physical or legal custody of the child. In addition to finding that grounds existed for termination, the trial court concluded termination was in the child's best interests. The mother now appeals the trial court's termination. Although we vacate one ground for termination relied upon by the trial court, we otherwise affirm the trial court's order terminating mother's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated in Part, Affirmed in Part, and Remanded.**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and ANDY D. BENNETT, J., joined.

Sarah Shults, Erwin, Tennessee, for the appellant, Chasity B.

Jason A. Creech, Johnson City, Tennessee, for the appellees, Roy C. and Carla C.

Ryann Jeffers, Elizabethton, Tennessee, Guardian Ad Litem.

**OPINION**

**BACKGROUND AND PROCEDURAL HISTORY**

Grayson M. ("Child"),[1] was born in October of 2017 to Chasity B. ("Mother").[2]

---

[1] This Court has a policy of protecting the identities of parties involved in parental termination cases.

[2] This litigation also concerned the parental rights of the father, Brandon M. Although his rights

Child has lived with Carla C. ("Grandmother") and Roy C. ("Grandfather") (collectively, "Petitioners"), his paternal grandparents, since birth. Petitioners officially gained legal custody of Child on November 22, 2017. On April 6, 2020, Petitioners filed a "Petition for Termination of Parental Rights and Relative Adoption" ("Petition"). In this filing, Petitioners set forth numerous grounds to support a termination of Mother's parental rights as to Child. Specifically, the petition alleged that grounds for termination existed pursuant to Tennessee Code Annotated section 36-1-113, including that (a) Mother had abandoned Child by failing to support and failing to visit Child; (b) persistent conditions existed; (c) Mother had engaged in conduct exhibiting a wanton disregard for Child's welfare; and (d) Mother had failed to manifest an ability and willingness to personally assume legal and physical custody or financial responsibility of Child.

On June 8, 2020, Mother filed a response to the Petition, largely denying the various grounds alleged for termination. Specifically, in support of her denial, Mother asserted that Petitioners moved without notifying her and blocked her number to prevent her "from contacting Petitioners to arrange to visit the minor child or making any payments of support or offering any tangible items of support for the minor child." On August 7, 2020, Petitioners filed a "Supplement to Petition for Termination of Parental Rights and Adoption" ("Supplemental Petition"), which detailed an additional four-month period where Mother allegedly failed to support Child prior to the filing of the Supplemental Petition.

A trial was held on June 10, 2021, and in the ensuing termination order, the trial court made the following pertinent findings of fact:

1. "[Child] receives excellent care from petitioners. They have met his challenging medical needs, which has allowed [Child] to physically thrive."
2. "[Grandfather] although disabled, cares for [Child] as a stay at home parent."
3. "Mother threatened [Grandmother] the day before Thanksgiving 2017. She called and said she was coming to retrieve [Child], and she would have [Grandmother] killed."
4. "Mother . . . [has] provided no monetary or in-kind support for [Child], while Mother spends $100 per month on cigarettes."
5. "Mother has been incarcerated during parts of 2010, 2011, 2012, 2013, 2015, 2016, 2017, 2018, and 2019."
6. "Mother has an extensive and recurring history of abusing various drugs, such as methamphetamine, cocaine, Xanax, Subutex, and others."
7. "Mother abused Suboxone while pregnant."

were ultimately terminated, he did not file a brief on appeal and is otherwise not participating in this appeal. Accordingly, we limit the substance of this appeal to the termination proceedings as they pertained to Mother.

8. "[Child] suffers from Hepatitis B that was passed to him by Mother, which resulted from Mother's illicit drug usage."
9. "Mother lacks a driver['s] license."
10. "Mother changed her phone number and did not provide it to [Grandmother]."
11. "Generally, Mother's testimony lacked credibility unless corroborated by other evidence. For example, she lied to the Court about driving a vehicle in a parking lot, as proven by her TikTok video. She testified she has access to a joint account with her boyfriend and did not know how much money he makes, but then acknowledged he makes $15 per hour – deceptive testimony."
12. "Mother relapsed after all of her drug classes."

In light of the foregoing, and in conjunction with the applicable case law, the trial court terminated Mother's parental rights on the grounds of: (a) abandonment by failure to support; (b) abandonment by failure to visit; and (c) failure to manifest an ability or willingness to assume legal and physical custody or financial responsibility of Child. Moreover, in addition to finding that grounds existed to terminate Mother's parental rights, the trial court determined, pursuant to Tennessee Code Annotated section 36-1-113(i), that it was in Child's best interests to terminate Mother's parental rights. This appeal followed.

## ISSUES PRESENTED

Mother raises numerous issues on appeal, which we have condensed and restated as follows:

1. Whether there exists clear and convincing evidence that there are grounds for termination of Mother's parental rights; and
2. Whether there exists clear and convincing evidence that termination of Mother's parental rights is in Child's best interests.

## STANDARD OF REVIEW

"A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re Carrington H.*, 483 S.W.3d 507, 521 (Tenn. 2016) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010)). Although this right is considered to be both fundamental and constitutionally protected, it is not absolute. *In re J.C.D.*, 254 S.W.3d 432, 437 (Tenn. Ct. App. 2007). This right "continues without interruption only as long as a parent has not relinquished it, abandoned it, or engaged in conduct requiring its limitation or termination." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). "[T]he state as *parens patriae* has a special duty to protect minors," *Hawk v. Hawk*, 855 S.W.2d 573, 580 (Tenn. 1993) (quoting *Matter of Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)), and "Tennessee law . . . thus . . . upholds the state's authority as *parens patriae* when interference with

- 3 -

parenting is necessary to prevent serious harm to a child." *Id.*

Under Tennessee law there exist "[w]ell-defined circumstances . . . under which a parent's rights may be terminated." *In re Roger T.*, No. W2014-02184-COA-R3-PT, 2015 WL 1897696, at *6 (Tenn. Ct. App. Apr. 27, 2015). These circumstances are statutorily defined. *Id.* (citing *In re Audrey S.*, 182 S.W.3d 838, 860 (Tenn. Ct. App. 2005)). "To terminate parental rights, a court must determine that clear and convincing evidence proves not only that statutory grounds exist but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). "'Clear and convincing evidence' is 'evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Id.* (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). This heightened burden of proof "minimizes the risk of erroneous decisions." *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007).

Due to this heightened burden of proof, we must adapt our customary standard of review:

> First, we must review the trial court's specific findings of fact de novo in accordance with Tenn. R. App. P. 13(d). Thus, each of the trial court's specific factual findings will be presumed to be correct unless the evidence preponderates otherwise. Second, we must determine whether the facts, either as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements required to terminate a biological parent's parental rights.

*In re Audrey S.*, 182 S.W.3d at 861.

## DISCUSSION

### *Abandonment by Failure to Visit*

Mother's first issue on appeal concerns whether the trial court erred in finding by clear and convincing evidence that she had committed abandonment by a failure to visit. Tennessee Code Annotated section 36-1-102(1)(E) provides that a failure to visit consists of the "failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation."[3] Tenn. Code Ann. § 36-1-102(1)(E). As a defense to this charge of

---

[3] Here, Petitioners filed to terminate Mother's parental rights on April 6, 2020. Accordingly, we look to the four-month period preceding this date for the purposes of analyzing this ground for termination. *See* Tenn. Code Ann. § 36-1-102(1)(A)(i) (stating that "abandonment' means, among other things, "[f]or a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent or parents . . . of the child who is the subject of the petition for termination of parental rights or adoption, that the parents or parents . . . have

- 4 -

abandonment, the statute provides that an "absence of willfulness" is an affirmative defense. Tenn. Code Ann. § 36-1-102(I). The parent "shall bear the burden of proof that the failure to . . . visit . . . was not willful." *Id.*

Here, Mother raised the defense of lack of willfulness concerning this ground for the termination of her parental rights. Accordingly, Mother bore the burden of proving this defense by a preponderance of the evidence. *See id.* This Court has previously explained willfulness in the following terms as it relates to a termination proceeding:

> [W]illfulness in the context of termination proceedings does not require the same standard of culpability as is required by the penal code, nor does it require that the parent have acted with malice or ill will. Rather, a parent's conduct must have been willful in the sense that it consisted of intentional or voluntary acts, or failures to act, rather than accidental or inadvertent acts. Willful conduct is the product of free will rather than coercion. A person acts willfully if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing. "Failure to visit or support a child is 'willful' when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so."

*In re J.G.H., Jr.*, No. W2008-01913-COA-R3-PT, 2009 WL 25020003, at *15 (Tenn. Ct. App. Aug. 17, 2009) (internal citations omitted). In its order, the trial court determined that Petitioners had proven, by clear and convincing evidence, that Mother had abandoned Child by failing to visit. Specifically, it found that, during the relevant four-month period, Mother failed to visit Child and, in fact, has not seen Child since November 12, 2017. Moreover, the trial court noted that Mother "offered no persuasive explanation as to why" she failed to visit Child and had not filed a petition to establish visitation or taken any steps towards visitation.

In her brief on appeal, Mother does not contest the contention that she has not seen Child since November 12, 2017. However, she maintains that her failure to visit Child was not "willful" within the meaning of the law. Mother maintains that due to certain actions by Petitioners she did not know how to proceed and that, even if she had attempted to enforce visitation, she "did not know where the [Petitioners] could be served with process or notice of a hearing." Mother maintains that her "inaction" was a direct result of Petitioners' conduct rather than laziness or disinterest on her part and thus, her actions cannot be said to be "willful." Respectfully, we are unpersuaded by Mother's argument.

As this Court has previously noted, "[f]ailure to visit . . . a child is 'willful' when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no

---

failed to visit [the child]").

- 5 -

attempt to do so, and has no justifiable excuse for not doing so." *In re Audrey S.*, 182 S.W.3d at 864 (citing *In re M.J.B.*, 140 S.W.3d at 654). "Failure to visit . . . is not excused by another person's conduct unless the conduct actually prevents the person with the obligation from performing his or her duty, or amounts to a significant restraint of or interference with the parent's efforts to develop a relationship with the child." *Id.* Here, Mother's contention that her failure to visit Child was not willful due to Petitioners' actions is not a viable defense. More specifically, we do not find the fact that there was certain animosity between Mother and Petitioners to support a finding that she was not willful. For example, in *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009), the Supreme Court found that a parent's failure to visit was willful when the parent "did not make any attempt to contact or visit [the child] for more than one year prior to the petition to terminate his parental rights" and had no explanation for this inaction, despite the fact that his early visits were discouraged by the child's caregiver. Moreover, potentially relevant to the inquiry is whether a parent has sought to use the court system to enforce visitation, something Mother has not done here. *See In re Kelsea L.*, No. E2019-00762-COA-R3-PT, 2020 WL 414556, at *3 (Tenn. Ct. App. Jan. 27, 2020). Here, Mother has not seen Child since November of 2017, and despite her contentions that purported threats from Petitioners prevented her from seeking visitation, we do not find this alone sufficient to show a lack of willfulness on Mother's part, especially considering the passage of time between the last time she saw Child and the filing of the termination petition and considering the fact that she has pursued no legal action to enforce visitation rights.

Based on the record, we conclude that Mother's actions were willful within the meaning of the statutory framework. Accordingly, we affirm the trial court's termination of Mother's rights on the ground of abandonment for failure to visit.

*Abandonment by Failure to Support*

Mother's next argument on appeal takes issue with the trial court's finding of abandonment by failure to support. As she did with the charge of abandonment by failure to visit, Mother again maintains that her failure to support was not "willful" within the meaning of the statute.

Tennessee Code Annotated section 36-1-102(1)(D) provides that "failed to support" or "failed to make reasonable payments toward such child's support" consists of "the failure, for a period of four (4) consecutive months, to provide monetary support or the failure to provide more than token payments toward the support of the child." Tenn. Code Ann. § 36-1-102(1)(D). Moreover, "that the parent had only the means or ability to make small payments is not a defense to failure to support if no payments were made during the relevant four-month period." *Id.* As with a failure to visit, a lack of willfulness is also an affirmative defense to this ground for termination. Tenn. Code Ann. § 36-1-102(1)(I).

Here, the trial court determined that "Mother made no financial payment to support

Child" and also "provided no tangible in-kind support during the relevant four-month period." As such, the trial court then concerned itself as to whether Mother's failure in this regard was "willful" under the statute. Ultimately, the trial court determined that Mother "provided no support" to Child and was unpersuaded by the argument that Mother "lacked the ability or means to make small payments." Specifically, the trial court noted Mother's smoking habit, finding that money directed towards her habit could have been diverted to supporting Child. As such, the trial court found Mother's lack of support to be willful. In her brief, Mother notes that, although she failed to pay or provide any child support for Child, such failure was not willful. Mother largely predicates her argument on the fact that she was apparently seeking treatment for her drug addiction and was attempting to pay fines to have her driver's license reinstated, in addition to living expenses. This, Mother contends, in conjunction with her apparent inability to locate or contact Petitioners, is evidence of her lack of willfulness in failing to support Child. Having reviewed the record, we find Mother's argument in this regard to be without merit. In support of this, we note her own testimony. In response to a question asking if she had the financial ability to support Child during the requisite four months, Mother answered "Yes." In response to a similar question, Mother again iterated that if "[Petitioners] would've came up with some-- something for me to pay I would've helped them." However, despite knowing where Grandmother worked, she did not attempt to contact her to provide support for Child. In light of the foregoing, the record supports a finding that Mother had the means to pay support for Child but failed to do so, and being of the opinion that there is insufficient support for Mother's claim that she did not act willfully, we affirm the trial court's finding of a ground for termination on the basis of abandonment by failure to support.[4]

*Failure to Manifest an Ability and Willingness*

Mother also contends that the trial court erred in finding that she had failed to manifest an ability and willingness to care for Child. Tennessee Code Annotated section 36-1-113(g)(14) provides for termination of parental rights when:

> A parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[.]

---

[4] Because there was both the Petition and Supplemental Petition filed in this matter, the trial court considered two separate periods for the ground of abandonment by failure to support, finding sufficient evidence that Mother failed to support Child during both periods. As to this second period, the trial court found that for a portion of the time, Mother was employed but did not make any payments to support Child. On appeal, neither Mother nor Petitioners appear to differentiate the periods in their arguments. We have reviewed the record and are satisfied that the evidence sufficiently establishes that this ground for termination has been met during both periods. Accordingly, we affirm the trial court's finding of grounds for termination on the basis of abandonment by failure to support for this second period as well.

In order for Mother's parental rights to be terminated pursuant to this ground, the petitioner must show, by clear and convincing evidence, that Mother has failed to manifest an ability and willingness to personally assume legal and physical custody or financial responsibility of Child. *Id.* The petitioner must then prove that placing Child in Mother's custody poses "a risk of substantial harm to the physical or psychological welfare of" Child. *Id.* Section 36-1-113(g)(14) requires "a parent to manifest *both* an ability and willingness" to assume legal and physical custody or financial responsibility." *In re Neveah M.*, 614 S.W.3d 659, 674 (Tenn. 2020). Accordingly, if a party seeking the termination of parental rights establishes that a parent has "failed to manifest *either* ability or willingness, then the first prong of the statute is satisfied." *Id.* (citing *In re Amynn K.*, No. E2017-01866-COA-R3-PT, 2018 WL 3058280, at *13 (Tenn. Ct. App. June 20, 2018)).

Based on our review of the trial court's findings, it appears that it *did* make a finding that Mother failed to manifest an ability and willingness to personally assume legal and physical custody or financial responsibility of Child pursuant to section 36-1-113(g)(14). However, as we noted above, the statute requires clear and convincing evidence of *two* prongs. Specifically, the party seeking to terminate parental rights must establish that "[a legal] parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child" *and* that "placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child." *In re Neveah M.*, 614 S.W.3d at 676 (quoting Tenn. Code Ann. § 36-1-113(g)(14)). As to this second prong requiring a finding a risk of substantial harm, we find no such specific determination in the trial court's order, and neither Petitioners nor the guardian *ad litem* address this omission on appeal. Because the trial court failed to make sufficient findings of fact and conclusions of law as to this ground for termination, the ruling must be vacated. *See In re Adaleigh*, No. E2019-01955-COA-R3-PT, 2021 WL 1219818, at *8 (Tenn. Ct. App. Mar. 31, 2021) (vacating the trial court's termination of parental rights on this ground due to its failure to address the second prong of the statute). Nevertheless, because there exist other grounds for terminating Mother's parental rights, the vacating of the trial court's finding as to this ground does not affect these other grounds for termination. Moreover, given our disposition herein in finding two other grounds for terminating Mother's parental rights, we do not remand for further findings.

*Best Interests of the Children*

Once it is determined that a ground exists for terminating a party's parental rights, the focus then shifts to what is in the child's best interest. *In re Audrey S.*, 182 S.W.3d at 877. Tennessee Code Annotated section 36-1-113(i) provides a non-exhaustive list of factors for the courts to consider whether termination is in the child's best interest, as

follows:[5]

     (1) Whether the parent or guardian has made such an adjustment of circumstances, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

     (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

     (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

     (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

     (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

     (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

     (7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

     (8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

     (9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i).

The Supreme Court has previously explained:

     "The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for

---

[5]Although not relevant to the issues posed by this particular appeal, we observe that Tennessee Code Annotated section 36-1-113(i) was recently amended by the General Assembly to incorporate additional factors to be considered as part of the best interest analysis under the statute. *See* 2021 Tenn. Pub. Acts, c. 190, §1.

- 9 -

termination."

> When conducting the best interests analysis, courts must consider . . . [the] statutory factors listed in Tennessee Code Annotated section 36-1-113(i). These statutory factors are illustrative, not exclusive, and any party to the termination proceedings is free to offer proof of any other factor relevant to the best interests analysis. Facts considered in the best interests analysis must be proved by "a preponderance of the evidence, not by clear and convincing evidence." "After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest[s]." When considering these statutory factors, courts must remember that "[t]he child's best interests [are] viewed from the child's rather than the parent's perspective." Indeed, "[a] focus on the perspective of the child is the common theme" evident in all statutory factors. "[W]hen the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child."

*In re Gabriella D.*, 531 S.W.3d 662, 681-82 (Tenn. 2017) (internal citations omitted). Making a determination as to a child's best interest "does not call for a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s . . . factors and then a determination of whether the sum of the factors tips in favor of or against the parent." *In re Audrey S.*, 182 S.W.3d at 878. Rather, "[t]he relevancy and weight to be given each factor depends on the unique facts of each case." *Id.*

Here, after analyzing the above-enumerated best interests factors, the trial court determined that it was in Child's best interest to terminate Mother's parental rights. On appeal, Mother's presents two main arguments concerning her contention that the trial court erred in making this determination. First, Mother argues that she should not be deemed at fault for what she purports to be Petitioners' "actions of concealing" Child from her. Second, Mother maintains that the trial court erroneously considered her criminal conduct.

In its order, the trial court examined each of the best interests factors enumerated in section 36-1-113(i) in making its determination of whether it was in Child's best interests for Mother's parental rights to be terminated. As pertinent to our inquiry, the trial court's findings in favor of termination were as follows:

> Although the long-standing history indicates Mother remains unfit to parent because of her past conduct involving drug usage, Mother asserts she has overcome this chronic behavior over the last two years. It is difficult to credit Mother's testimony because of her lack of credibility.

. . .

Mother has not maintained any visitation or contact with [Child]. She has taken no effort beyond the perfunctory to establish a visit or contact with [C]hild.

. . .

For years and for the vast amount of time that [Child] has been on this Earth, Mother has had no contact with him. There is no bond – they are strangers.

. . .

[Child] will suffer if Mother is allowed to have a parent-child relationship with him. He has a Hepatitis diagnosis that requires specialized treatment. The care he has received has allowed him to otherwise thrive. Mother is not a responsible person, and there can be no expectation that she will find the motivation to give the attention and focus necessary for his medical care.

. . .

Mother is not a safe and stable person. Mother has a pattern of using Suboxone or Subutex without a prescription, although she regularly receives Subutex now with a prescription. As demonstrated by drug tests in November and December 2020, she still uses controlled substances without prescriptions. Mother still does not work.

. . .

Mother claims to suffer from several significant mental health diagnoses, but she has failed to seek treatment or confirmation of [her] self-diagnosed conditions. It is critical to his well-being for [Child's] caregivers to demonstrate a commitment to medical treatment, which Mother has not. Further, her emotional status is unsafe as she engages in strange and sometimes illegal behavior to make social media videos. These videos provided insight to a record of continued irresponsibility and immaturity. She is unable to provide stable care and supervision of a child.

. . .

Although no evidence was presented to reveal the child support that would have been due under the child support guidelines, Mother has not paid any

child support, which is inconsistent with the child support guidelines. Mother has worked and could have paid something. She failed to make a payment of some support during the pendency of this case.

In light of these findings, the trial court concluded that, "[t]he most important factors favor terminating the parent-child relationship is the wholesale lack of a relationship. Mother has not visited child in years, and Mother has made no meaningful effort to arrange visits. She has failed to pay any support for him. She is undependable and unfit to parent. [Child] would suffer greatly in her care. Termination of Mother's parental rights is in the best interests of [Child.]"

Having reviewed the record on appeal, we agree with the trial court's determination that it is in Child's best interests to terminate Mother's parental rights. Mother acknowledges in her brief that she is a stranger to Child but argues that she is not solely to blame and contends that blame "lies equally" with Petitioners. Thus, according to Mother, this particular fact "should not be given the great weight which it received by" the trial court, as the trial court found that "[t]he most important factors terminating the parent-child relationship is the wholesale lack of relationship." We find Mother's argument in this regard to be without merit. As we discussed earlier in this Opinion, the onus was on Mother to enforce any visitation with Child. Despite her assertions that Petitioners were keeping Child from her along with purported threats of jail time, Mother was well within her rights and ability to enforce her visitation with Child. Moreover, as we determined previously, we do not find the existing animosity between the parties to have prevented Mother from maintaining contact with Child. Accordingly, regardless of Mother's argument to the contrary, we find no issue with the trial court's reliance on the lack of relationship between Mother and Child.

As to Mother's second contention, that her criminal conduct should be examined after the birth of Child, Mother states that "[l]ogically, a person cannot disregard or display indifference about someone whom he does not know exists." (quoting *In re Anthony R.*, No. M2014-01753-COA-R3-PT, 2015 WL 3611244, at *3 (Tenn. Ct. App. June 9, 2015)). Specifically, Mother argues that her criminal conduct since Child's birth has been "somewhat limited." Respectfully, we find Mother's argument here without merit. First, we note that Mother does not specifically quote or cite the portion of the order in which the trial court was relying on her criminal conduct, especially her criminal conduct prior to Child's birth. In her brief she states that "[r]eliance on evidence concerning [Mother's] misdemeanor crimes committed prior to the birth of [Child] was in error." As best we can tell in reviewing the trial court's order, Mother's criminal conduct comes into play concerning the trial court's analysis of the factor concerning whether Mother "has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest" to be in her home. As to this factor, the trial court was well within its power to consider previous actions taken by Mother that would impact its decision on whether it would be in Child's best interest to be in Mother's home. In its order, the trial

court noted Mother's assertion that she had overcome past conduct involving drug use. The trial court, however, took issue with her credibility as to this assertion. Based on the trial court's findings here, we do not conclude that the trial court was inappropriately relying on her past conduct and instead was making a credibility determination, which is well-within its power to do so. Moreover, in perusing the trial court's other findings as to best interests, we observe that the trial court does note that Mother "still uses controlled substances without prescriptions" as indicated by drug tests in November 2020 and December 2020, well after the birth of Child. There is no other express mention of criminal conduct or potential criminal conduct in the trial court's best interests findings. We find Mother's argument in this regard to be without merit.

As to the other findings made by the trial court concerning Child's best interests, we find that they favor termination of Mother's parental rights. The record makes clear, and Mother herself confirms, that there is no relationship between Mother and Child. Mother also has not paid any support towards the care of Child, despite being able to for at least a portion of the pendency of this case. Moreover, Mother's apparent on-going use of controlled substances[6] also poses a concern regarding her ability to care for Child, especially in light of Child's medical needs.

Accordingly, we conclude that the trial court's findings concerning the best interests factors enumerated in section 36-1-113(i) favor termination of Mother's parental rights by clear and convincing evidence. The trial court's determination that the termination of Mother's parental rights is in the best interests of Child is therefore affirmed.

## CONCLUSION

Based on the foregoing, although we vacate the trial court's finding that Mother failed to manifest an ability and willingness to assume legal and physical custody of Child, we otherwise affirm the trial court's order terminating Mother's parental rights.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE

---

[6] We specifically take issue with Mother's use of controlled substances *without* a prescription.

- 13 -